On Motion to Dismiss the Appeal.
This is an appeal from a judgment recognizing the three appellees, namely, Mrs. Nellie Gorman Mix, Mrs. Susie Gorman Breitkreutz, and Eugene Gorman, to be the coheirs, with the defendant and appellant, Mrs. Octavia Braud Collongues, of the deceased, Sidney Achee Braud, and, as such, the owners of three-eighths of his estate. Mrs. Octavia Braud Collongues, defendant and appellant in the proceeding, claims that she is the only heir of the deceased, and that she is therefore entitled to the whole estate. She was the administratrix of the estate; and the proceeding brought by the alleged coheirs was brought against her "individually and as administratrix."
The appellees contend, in their motion to dismiss the appeal, that Mrs. Octavia Braud Collongues appealed only in her capacity as administratrix, and not in her own or individual right; and hence they move to dismiss the appeal on the grounds: (1) That an administrator has no interest in appealing, and therefore no right to appeal, from a judgment fixing the relative interests of the coheirs of a succession; (2) that Mrs. Collongues did not furnish an appeal bond in her capacity as administratrix; and (3) that Mrs. *Page 413 
Collongues, who is a necessary party to the proceeding, and who is not before the court as an appellant in her own or individual right, was not cited to appear as an appellee in her own or individual right.
The question whether Mrs. Collongues had the right to appeal in her capacity as administratrix, on behalf of the succession, need not be considered, and it is also not important that she was not cited as an appellee, if we find that she obtained and perfected an appeal in her own or individual right; for it is conceded that she, individually, had an interest in appealing, and therefore had the right to appeal from the decision rendered against her.
Our opinion is that Mrs. Collongues is before the court as an appellant in her own or individual right. It is true that her motion for an appeal, in the district court, was in these words: "On motion of Mrs. Octavia Braud Collongues, administratrix of the above entitled and numbered cause, and defendant in rule," etc. But in fact she was a defendant in the rule, in her personal or individual capacity, as well as in her capacity as administratrix; and the title which she applied to herself in her motion for the appeal may well be regarded merely as describing the individual — particularly as she was not interested in appealing except in her own or individual right — and more particularly because the motion for an appeal was signed by Mrs. Octavia Braud Collongues, without her title of administratrix. The appeal bond furnished by Mrs. Collongues also shows that it was intended to bind her individually, notwithstanding, in one place in the bond, she is described as "Mrs. Octavea B. Collongues, administratrix of the above entitled succession"; for the instrument begins with the expression "Know all men by these presents that we, Mrs. Octavia B. Collongues as principal *Page 414 
and the Globe Indemnity Co. as surety, are held and firmly bound," etc., and the bond is signed by Mrs. Octavia Braud Collongues, without the title of administratrix.
An appropriate decision on the subject is found in Bisland v. Provosty, 14 La. Ann. 169. The defendant, Provosty, who appealed from the judgment of the district court, was the syndic of an insolvent estate; and the question presented was whether he had appealed only as syndic or also in his individual capacity. The ruling was that Provosty had appealed in his individual capacity, notwithstanding he was described as "Syndic" in one place in his motion for an appeal and in the appeal bond. Chief Justice Merrick, for the court, said:
"As the mention of A. Provosty in the bond and motion for appeal may be construed to mean either capacity, and the addition of syndic in one part of the bond and its omission in another may be regarded as a descriptio personæ, we think in the absence of any phrase excluding the idea of an appeal in his individual capacity, that it may be held that the defendant intended to bring himself before us in such capacities as should be necessary to maintain the appeal."
That is the common sense view of the matter, because it cannot be doubted that Mrs. Collongues intended to bring herself before the appellate court in the capacity which would be necessary to maintain her appeal; and it is conceded by the appellees that she should have appealed in her individual capacity.
The motion to dismiss the appeal is overruled.
 On the Merits.
Mrs. Nellie Gorman Mix and Mrs. Susie Gorman Breitkreutz and Eugene Gorman, Jr., brought this suit against Mrs. Octavia Braud *Page 415 
Collongues, individually and as administratrix of the succession of her brother, Sidney Achee Braud, deceased, averring that they (the plaintiffs) were, respectively, the sisters and brother of the half blood of Mrs. Collongues and her deceased brother, and, as such, entitled to the three-eighths of his estate. Mrs. Collongues is the only surviving daughter, and Sidney Achee Braud was the only son, of the marriage of Lavinia Achee to Melchoir Braud in 1882. The plaintiffs are, respectively, the daughters and son of Lavinia Achee, and claim that she was divorced from Melchoir Braud and afterwards married to Eugene F. Gorman, and that they (the plaintiffs) are the issue of that marriage. The defendant Mrs. Collongues denies that her mother was ever married to Eugene F. Gorman or divorced from Melchoir Braud. The district court decided in favor of the plaintiffs, and the defendant Mrs. Collongues has appealed from the decision.
The plaintiffs were not able to produce a record of the marriage of their mother to Eugene F. Gorman, or of her divorce from Melchoir Braud, but the proof of the marriage, by reputation, and by its recognition in the family and in the community generally, is abundant. Eugene F. Gorman was born in Ireland, on the 12th of June, 1839, and came to this country when only nine years of age. He entered the theatrical profession at an early age, and traveled extensively, appearing in nearly all of the large cities in this country and in Canada. He served in the Confederate Army, and was injured in the First Manassas engagement. His first wife, Miss Susie Starr, was also of the theatrical profession. She and two children of the marriage died many years ago — before the supposed second marriage of Gorman. He died in New Orleans on the 8th of July, 1907. His reputation in this city was that of a very *Page 416 
honorable man. He and the mother of the parties to this suit lived together here for many years, as husband and wife, rearing their children properly, and were free from any suspicion or thought of their being unmarried. Considering how extensively he traveled over the country at the time of the supposed second marriage, there is no telling where the marriage ceremony may have been performed.
There would be no doubt about the proof of the marriage of Lavinia Achee to Eugene F. Gorman, or the validity of the marriage, except for the fact that there is no proof by record of a divorce of Lavinia Achee from Melchoir Braud. She was married to Braud on the 1st of February, 1882, at Labadieville, in Assumption parish, La. He died in New Orleans on the 2d of June, 1921, at the age of seventy, and was theretofore residing here, on South Claiborne street. Mrs. Lavinia Gorman died in this city on the 30th of March, 1895, at the age of forty-two. The record discloses that Melchoir Braud regarded the relationship between Eugene F. Gorman and Braud's former wife as that of husband and wife, for he lived here in the same state, and during part of the time in the same city, and visited them, even after their three children were born. In the light of these circumstances, it is not unreasonable to presume that Lavinia Achee was divorced from Melchoir Braud. In fact, it would be very unreasonable to assume that Braud would visit his wife and the man whom she was living with in concubinage, and the children of the illicit cohabitation, if in fact she was Braud's wife and was living in concubinage with the other man. The presumption in that respect is very much the same, though not as strong, as it would be if the son and daughters of Eugene F. Gorman could produce a record of his marriage to their mother, *Page 417 
even though the marriage was contracted during the lifetime of her former husband. But the proof of the second marriage is so convincing in this case that the presumption of innocence of the contracting parties, in our opinion, ought to prevail over any presumption to the contrary arising from the fact that the woman's first husband was living when she contracted the second marriage.
Counsel for the appellees argue, alternatively, that, if their mother was not divorced from Braud, it must be presumed that the second marriage was contracted in good faith on the part of Gorman; and counsel invokes article 117 of the Civil Code, which declares that a null marriage has the effect of a valid marriage, as to the parties and their heirs, if the contracting parties were in good faith; and counsel invokes also article 118, which declares that, if only one of the parties to a null marriage was in good faith, the marriage has its civil effects only in his or her favor "and in favor of the children born from the marriage." The circumstances of this case, however, do not create the presumption merely that Eugene F. Gorman believed, when he married Lavinia Achee, that she was not already married; the conclusion from all of the circumstances is that she was divorced from her first husband.
A serious proposition which the appellant must meet in this case is that, if the appellees are not deemed to be the legitimate children of Eugene F. Gorman, they are presumed by law to be the legitimate children of Melchoir Braud, and hence the sisters and brother, respectively, of the appellant and of her deceased brother, Sidney Achee Braud. If Lavinia Achee was not divorced from the father of the appellees when they were conceived, they are presumed by law to be his legitimate children. Article 184 of the Civil Code declares that the law considers the husband *Page 418 
of the mother as the father of all children conceived during the marriage. Article 188 declares that, although cohabitation between a husband and wife is not presumed to have taken place if she has conceived when there was a decree of separation from bed and board, the cohabitation is presumed to have taken place if she has conceived during a voluntary separation. And article 191 makes the presumption of paternity absolute when the husband has failed to bring a suit in disavowal of the paternity within one month, if he was present, or within two months after his return, if he was absent from the place when the child was born. Melchoir Braud knew of the birth of these children, and visited them and their mother, and never disavowed their paternity; the reason being, manifestly, that the children were born of the second marriage of their mother. If the appellees had proceeded successfully upon the contention which the appellant makes, they would be entitled to three-fourths of the estate of their deceased brother. They are claiming only three-eighths of the estate, on the true and correct assertion that they are the children of the second marriage of their mother.
The judgment is affirmed.