## SARAH HUBBELL et al. *v.* MARY INKSTEIN et al.

Slight proof of the celebration of marriage is sufficient, where the spouses uniformly, publicly,
and for a long time bear to each other the relation of husband and wife.

Where a man married two wives, and the second wife was in good faith, each wife is
entitled, at the death of the husband, to one-half of the community.

A PPEAL from the Second District Court of New Orleans, *Lea*, J.   *Magne*
and *Koontz*, for plaintiffs.   *Durant* and *Horner*, and *P. C. Cuvillier*, for
defendants.   By the court:

Rost, J.   This is an action by the widow and children of *Julius Hubbell*,
who died in this city in 1837, claiming from the defendants the entire succession
of their husband and father.

The defence is a general denial and an averment, that the defendant, *Mary
Inkstein*, married *Julius Hubbell* in 1826, believing him a single man, and that
the other defendants, with the exception of *Joshua Peebles*, are the issue of that
marriage, born during the continuance of her good faith, and that even if the
allegations of the plaintiffs should be true, they also are entitled to all the advan-
tages which would result from a lawful marriage.

The succession of *Julius Hubbell* was composed exclusively of community
property, and consisted of money, with which *Mary Inkstein* purchased a house
and lot for herself and children.   The two eldest of those children having
become of age, sued her for their share of their father's succession, and obtained
against her a judgment for $460 each, which, on appeal, was affirmed by this
court.   5 Ann. 524.   Under this judgment, the house and lot were seized and
sold to *Joshua Peebles*, for $1850, on twelve months' credit.   On the suggestion
of *Mary Inkstein*, that this house was the only property she had to satisfy the

claims of her five children, and that as the price bid was less than they were entitled to receive, the proceeds of the sale should be distributed among them *pro rata.* This sum has been arrested in the hands of the sheriff, subject to the further order of the court. All those who claim to be paid out of it, are parties to this suit.

The district judge was of opinion that the allegations of the defendants were made out, and that, for the purposes of this suit, they were to be considered as a lawful wife and legitimate children.

The plaintiffs and appellants insist that there is error in this part of the judgment, and that the marriage is not proved by legal evidence. The argument of their counsel would apply, in all its force, to a case in which a woman who had not the *status* of a lawful wife, would claim to be recognized as such after the death of the alleged husband. They have entirely overlooked the *possession d'état* which *Mary Inkstein* and her children have uniformly enjoyed, as shown by the unimpeached testimony of witnesses, and by the still stronger evidence that, after the death of *Hubbell, Mary Inkstein* was recognized by the court as his widow, was confirmed as such in the tutorship of his children, and placed in possession of his succession, without any one contesting or doubting her right. If to this be added the fact of her cohabitation with *Hubbell*, to the time of his death, slight proof of the celebration of the marriage is sufficient to establish it. We are sure that there are hundreds of marriages, in Louisiana, in relation to which more satisfactory evidence than is found in this record, could not be obtained.

It is said that in the certificate of marriage adduced, her name is not properly spelt. But as she can neither read nor write, and it is not shown she had any relations in this country, no one can tell how her name should be spelt; and the French priest who married her, at Mobile, is as apt to be right in the spelling as the counsel who attended to the proceedings in the succession of her husband.

It is also urged that there is no proof that the person, married in Mobile, was the defendant in this suit. The names of the husband and wife, and the date of the act are, under the facts of the case, *primâ facie* evidence of the identity of the parties, and sufficient to throw upon the plaintiffs the burden of proving that the marriage in Mobile was between other persons. It may be true, that *Hubbell* had his marriage celebrated in Mobile for purposes of concealment, but this cannot affect the good faith of his wife ; nor do we think her declaration, that it had been celebrated in New Orleans, sufficient to produce that effect. *Succession of Prevost*, 4 Ann. 348.

Being of opinion that there is nothing in the record to show that *Mary Inkstein* ceased to be in good faith, before the death of *Julius Hubbell* or until long afterwards, we consider her entitled to the rights of a lawful wife, and it becomes necessary to ascertain what those rights would be.

*Julius Hubbell* came here from New York, in 1820, and remained till his death, in 1837. He was an inhabitant of the State, and the property acquired by him during his residence was subject to our laws, and must be held, under the circumstances of this case, to have been community property between his first wife and himself. The marital cohabitation did not fail through her fault, and she is not to lose her rights on account of the fault and misconduct of her husband.

In the case of *Patton v. The Cities of Philadelphia and New Orleans*, in many respects similar to the present, we held, that under the former laws of the

country, where a man married two wives, and the second wife was in good faith at the death of the husband, each took one-half of the community property. Hubbell died after the repeal of those laws. But the principle upon which they rested, appears to us clearly deducible from those now in force; and the reasons of the law, as stated in *Patton's* case, have equal force under both systems. The wife is now, as under the Spanish laws, entitled, at the dissolution of the marriage, to one-half of whatever may remain after paying the community debts. This claim may be assimilated to a debt from the succession of the husband to the wife, and as such it excludes the right of inheritance of the children. 1 Ann. 98.

We are therefore of opinion, that *Sarah Hubbell* and *Mary Inkstein* were each entitled to one-half of the acquets and gains at his death. But as the defendants possessed, in good faith, they made the fruits of the property theirs, and the plaintiff, *Sarah Hubbell*, has no claim for interest, except from the judicial demand.

We must now examine the claim of the plaintiffs against *Joshua Peebles*. They aver, that the house and lot having been purchased with the funds of the community, they have the right to ratify the purchase, and to claim them as community property. They further allege, that if the property does not belong to the community, they have a legal mortgage upon it, which they pray may be enforced. Without determining what the rights of *Sarah Hubbell* might be, if the property was still in the possession of *Mary Inkstein*, it is sufficient to say, that she purchased in her own name, and that the title remained in her name, on the public records, for many years, and until it was sold to the defendant. He cannot, therefore, be affected by secret equities existing between her and the plaintiffs. The minors having no claim upon the property, it is clear that there was no mortgage, in favor of *Sarah Hubbell*, to secure community rights. The sale to *Peebles*, made under a valid and subsisting judgment, transferred the property to him, and the only question in the case which concerns him, is to to whom he is to pay the price.

The petition prays for a judgment against *Mary Inkstein* and her children, for the entire succession, and contains, also, a prayer for general relief. We think with the district judge, that the plaintiff is not entitled to a personal judgment against the children of the second marriage. But they have rights against them, which may, under the pleadings, be determined in the present suit.

*James* and *Dorothe Hubbell*, the two heirs of age, obtained against their mother a judgment for the sum of $460 each, this being the amount of their share in the half of the community property, supposed to belong to the succession of their father. In this suit *Sarah Hubbell* evicts them of their title to the community, and is adjudged to be the sole owner of the share of her husband. The judgment rendered in favor of the supposed owners must, therefore, inure to her benefit, and she is entitled to receive the amount made under the execution, in satisfaction of that judgment, and in part payment of her claim.

It is therefore ordered, that the judgment in this case be reversed. It is further ordered, that the plaintiff, *Sarah Hubbell*, recover from the defendant, *Mary Inkstein*, $2257 13, this being the undivided half of the succession of *Julius Hubbell*, with legal interest from the 14th February, 1851, till paid. It is further ordered, that the judgment obtained by *James* and *Dorothe Hubbell*, against their mother, *Mary Inkstein*, be, and is hereby adjudged to be, the property of *Sarah Hubbell*. It is further ordered, that *Joshua Peebles* be

ordered to pay over to the said *Sarah Hubbell*, the price of the property pur- HUBBELL
chased by him, under execution, in the suit of *James Hubbell et al.* v. *Mary* INKSTEIN.
*Hubbell*, and that upon payment thus made, the judgment in that suit be
entered satisfied, and the whole amount paid entered as a credit upon the present
judgment. It is further ordered, that *Mary Inkstein* and her children pay costs
in both courts.