## EVANS et al. v. DISTRICT GRAND LODGE NO. 21, GRAND UNITED ORDER OF ODD FELLOWS, et al.
### No. 1243.

Court of Appeal of Louisiana. First Circuit.
Dec. 4, 1933.

F. B. Smith, of New Orleans, for appellant Grand Lodge.

L. C. Butler, of Shreveport, and Bert E. Durrett, of Baton Rouge, for appellant Addie Bell Kendall Evans.

Chas. J. Mundy, of New Orleans, for appellees.

ELLIOTT, Judge.

Olevia G. Evans, James T. Evans, Hattie Evans, and Gertrude Evans, wife of Dr. J. H. Watkins, allege themselves to be the children and sole legal heirs of James Tyler Evans, alias J. J. Evans, alias Julius J. Evans, deceased, and, as such, entitled to the proceeds of an insurance policy for $500 issued to J. J. Evans by District Grand Lodge No. 21, Grand United Order of Odd Fellows, Jurisdiction of Louisiana. They allege that Sidney Evans is named in the policy as sole beneficiary; that their father while living in Shreveport and known there as Julius J. Evans and J. J. Evans had a son named Sidney Evans, named as the beneficiary in said policy; that Sidney Evans died on the 5th day of May, 1931, and their father died on June 13, 1932, without having substituted a new beneficiary; that petitioners were born of the marriage of their father with their mother Maria Brown, and they claim the proceeds of said policy by inheritance from him.

District Grand Lodge No. 21, Grand United Order of Odd Fellows of the Jurisdiction of Louisiana, which will be hereinafter called the lodge, appeared, and for answer, after denying some of their averments and admitting others, alleged that it was a mere stakeholder, and that the proceeds of the policy had also been demanded of it by Mrs. Addie Bell Kendall Evans. They prayed that she be made a party defendant, and that the proceeds of the policy be paid to the party held by the court entitled thereto, and that plaintiff's demand be rejected.

Addie Bell Kendall Evans was thereupon made a party defendant, and, upon being cited, appeared, and, answering plaintiffs' petition, admitted that James Tyler Evans, also known as Julius J. Evans, went to Shreveport to live and was there known as Julius J. Evans and J. J. Evans. Further answering she denied plaintiffs' alleged heirship and the alleged marriage of the said James Tyler Evans, alias J. J. Evans, and Maria Brown, and plaintiffs' alleged rights to the proceeds of said policy. She further alleged her own marriage with the said Julius J. Evans, her good faith in the matter, and the birth of Sidney Evans, born of her said marriage. She further admits his death at the time alleged and the subsequent death of the said J. J. Evans without having substituted in said policy another beneficiary to take the place of Sidney Evans, deceased, that as the widow of J. J. Evans and heir of Sidney Evans she is entitled to the proceeds of said policy, but, in the event it should appear that the said J. J. Evans had married Maria

Brown, and that said marriage had not been dissolved, she then, in that event, alleges that she was a putative wife, and that the proceeds of said policy should be paid to her as the putative widow of J. J. Evans and as the mother and sole heir of Sidney Evans named therein as the sole beneficiary.

In an amended and supplemental answer she elaborates her defense against the plaintiffs as well as her right to the proceeds of the policy in question.

The lower court rendered judgment in favor of the plaintiffs as prayed for. The defendant lodge prayed for, was granted, and perfected a suspensive appeal. The defendant Addie Bell Kendall Evans prayed for and was granted and perfected a devolutive appeal.

Plaintiffs filed an exception in the lower court in which they urge against the answer and claim of Addie Bell Kendall Evans that it sets forth no right or cause of action. The minutes of the lower court show that this exception was, by consent of counsel, referred to the merits. The effect of this reference was to merge the exception with the petition, and, as it was done as the result of the mutual consent of the parties, the reference is not reviewable on appeal.

Addie Bell Kendall Evans also filed an exception of no cause or right of action against the petition of the plaintiffs. The minutes show that this exception was also by consent of counsel referred to the merits. This exception is not urged in her brief, and will be looked on as abandoned.

When the case was called for hearing in this court, the plaintiffs appellees, referring to the answer of Addie Bell Kendall Evans as an intervention, filed against it another exception, contending that it sets forth no right or cause of action. This defendant did not intervene in the suit. She was made a party defendant by order of court. Her answer contains a demand in reconvention, but an exception that an answer sets forth no right or cause of action is unknown in our practice. The exception is, besides, but a repetition of the one filed in the lower court and which was by consent referred to the merits. Under the circumstances, this exception will not be entertained.

Plaintiffs appellees, in the same appearance, answered the appeal taken by the lodge, in which they move that it be dismissed. The plaintiffs allege in their answer that this defendant lodge is a mere stakeholder, and, having prayed in its answer in the lower court that the proceeds of the policy be paid to whomsoever the court should decide is legally entitled thereto, it had no appealable interest in this case, and that its appeal is frivolous. They pray that it be dismissed and that a penalty be imposed on it for having taken a

frivolous suspensive appeal. This motion appears to be well founded.

This defendant avers in its answer: "And now further answering, defendant shows that because of said demand (referring to that made by Addie Bell Kendall Evans) it is a mere stakeholder in the premises and desires to have the said Mrs. Addie Bell Kendall Evans, residing in Shreveport, Louisiana, made a party to this suit and the proceeds paid to whomsoever the Court shall decide is legally entitled to it."

Its brief contains the following reason for its appeal: "There was an apparent delay on the part of the Intervenor, Addie Bell Kendall Evans, in the taking of a suspensive appeal, and because of previous experience in having to pay twice to widows of the first and second marriage, your Defendant, District Grand Lodge #21, Grand United Order of Odd Fellows, took a suspensive appeal from the judgment of the lower Court to this honorable Court for final determination of the subject matter." Maria Brown Evans is not a party to this suit. The argument of the defendant lodge about its previous experience in having to pay twice to widows of the first and second marriages indicates that it was aware of her existence but considered it clear beyond dispute that she had no standing to claim the proceeds of this policy or any part thereof, otherwise she would have been made a party at the same time the other widow was called into the case.

The note of testimony in the case, Evans v. Eureka Grand Lodge, Free and Accepted Masons (La. App.) reported in 149 So. 305 et seq., offered in evidence on the present trial, shows that Maria Brown Evans was a witness on behalf of the plaintiffs on the trial of that suit. The report of the case does not indicate that she was a party thereto. The plaintiffs recovered judgment for the proceeds of the policy. The defendant lodge announces in its answer, having reference to the plaintiffs and the defendant Addie Bell Kendall Evans, that it is ready to pay the proceeds of the policy sued on to whomsoever the court shall decide is legally entitled thereto. We think she must undoubtedly have known of the institution of the present suit. We conclude that Maria Brown Evans was not made a party to this suit understandingly on the theory that, under the situation which exists, there is no danger that the defendant lodge may be compelled to a dual payment of the policy on her account. Under the circumstances, no good reason appears why we should remand the case on account of her absence therefrom.

As a mere stakeholder, ready and willing to pay to the party adjudged by the court entitled thereto and without fear of being compelled to a dual payment, the defendant lodge had no interest in taking a suspensive appeal. For this subject see Ansley v. Stuart, 126 La. 369, 52 So. 545. A devolutive appeal would have done no harm, but the suspensive appeal had the effect of staying plaintiffs' hands in the collection of the judgment in the interest of Addie Bell Kendall Evans just as effectively as if she had suspensively appealed. Such being the facts, we think the suspensive appeal taken by the defendant lodge must be regarded as not protective of its interest, but frivolous and merits the penalty prayed for by the plaintiffs. It would serve no purpose, however, to dismiss the appeal.

The evidence shows that James Tyler Evans, also called J. J. Evans and James Evans, was married to Maria Brown under the name of James Evans on August 22, 1889. They lived together as man and wife about thirteen or fourteen years. Six children were born of their marriage, two of whom died during their minority leaving the four plaintiffs in the present suit. The testimony is to the effect that the family moved to Texas, and, while living in that state, the husband told his wife to go to her father until she heard from him. Thereupon the wife, Maria, took her children and came to New Orleans and resided there until the children were grown. It appears that some six or seven years after their separation, and while the mother and children lived in New Orleans, the husband and father visited his family in New Orleans during the sickness of their son Lawrence, who died, paid the expenses of the burial of his son, visited them occasionally afterwards, and during his visits resumed his marital relations with his wife, Maria, but about 1912 she heard that he had another wife living in Shreveport. She ascertained the name of the woman, and wrote her, telling her about his marriage to her (Maria), etc.

The record shows that on October 4, 1905, while living in Shreveport, the said James Tyler Evans, acting under the name of Julius J. Evans, married Addie Bell Kendall without having been divorced from Maria. One child, named Sidney Evans, was born of this marriage on May 9, 1906. On May 21, 1920, the said James Tyler Evans, acting under the name of J. J. Evans, obtained from the defendant lodge the insurance policy sued on, naming his son Sidney Evans therein as the sole beneficiary. Sidney Evans died on May 5, 1931, intestate, without having been married, leaving no descendants, but left his father and mother surviving him. The father, James Tyler Evans, alias J. J. Evans, etc., died June 13, 1932, intestate, without having substituted any name in the policy in place of Sidney Evans who died previous to himself.

We are satisfied that Addie Bell Kendall in her marriage with James Tyler Evans acted in good faith, and was not aware that he had a wife from whom he had not been divorced,

and that she was in like good faith at the time of the conception and birth of Sidney Evans, but six or seven years before the issuance of the policy in question and about nineteen years previous to the death of Sidney Evans and about twenty years before the death of James Tyler Evans, etc., this good faith on her part ceased.

After that time she cannot be regarded as a putative wife, living with her husband in good faith, except by doing violence to the facts. Her good faith was destroyed by Maria, who wrote her two letters fully informing her of the facts. Addie Bell Kendall admits in her testimony that she got these letters from Maria in 1912. She says, after reading and answering them, she destroyed them, but Maria kept her answers and produced them on the trial of the case (Evans v. Eureka Grand Lodge, etc.), which was appealed to the Court of Appeal, Second Circuit. See the opinion and decree entitled Evans v. Eureka Grand Lodge Free and Accepted Masons, heretofore mentioned.

The answering letters, written by Addie Bell Kendall to Mary or Maria Evans, indicate the character of the information imparted to her. The letter of April 3, 1913, shows that Addie Bell Kendall Evans had investigated the claims of Maria Evans and was fully satisfied with the truth of her claims. The statements of Addie Bell Kendall Evans in her letter to Maria or Mary Evans are such that there is no question about her bad faith as to her marriage status after that time. The note of testimony shows that Addie Bell Kendall Evans admitted writing these two letters. They were received in evidence on the trial of the case against Eureka Grand Lodge, etc., and the Court of Appeal, Second Circuit, in deciding the case, acted on the information contained in these letters. The present case was submitted to the court on the note of testimony taken in that case. These letters were not brought up as part of the record, but the report of the case mentioned shows that they were copied by the court into the opinion as part of the facts on which the court acted on deciding the case.

The Supreme Court has often said that it would take cognizance of facts established and upon which it had acted in deciding other cases that had been brought before it on appeal. See Hubbs v. Kaufman, 40 La. Ann. 320, 4 So. 58; Paland v. Chicago, St. L. & N. O. R. R. Co., 42 La. Ann. 290, page 295, 7 So. 899; Raymond v. Villeré, 42 La. Ann. 488, page 491, 7 So. 900; Mower v. Kemp, 42 La. Ann. 1007, page 1015, 8 So. 830; Lattier v. Abney, 43 La. Ann. 1016, page 1018, 10 So. 360. So taking cognizance of these letters, we hold that, after April 3, 1913, Addie Bell Kendall Evans was fully aware that the Evans to whom she was married had a wife living, to whom he had been married in 1889

and from whom he had never been divorced, and that he had, by his first wife, a family of children, the plaintiffs in the present suit. We therefore hold that, at the time the policy sued on was obtained, at the time of the death of Sidney Evans, and of course at the time of the death of James Tyler Evans, alias J. J. Evans, Addie Bell Kendall Evans was in bad faith as to her marriage status, and we agree with the Court of Appeal in the case of Evans v. Eureka Grand Lodge, etc., that, as to rights originating after that time, she cannot be looked on as a putative wife still protected by the provisions of the Civil Code, arts. 117 and 118. In the case mentioned, the plaintiffs were the same as in the present case. Addie Bell Kendall Evans, defendant in the present case, was the defendant in that case. The only difference is that in the case mentioned Addie Bell Kendall Evans was named as the beneficiary in the policy, while her son, Sidney, is the beneficiary in the present policy.

It therefore does not help her in her present claim that she was in good faith at the time of her marriage and at the time of the conception and birth of her son. At the time of the issuance of the policy sued on, at the time of the death of her son, and at the time of the death of her husband, she knew her marital status and was in bad faith, and is therefore not entitled to be regarded as a putative wife after the certain beginning of her bad faith. The defendant Addie Bell Kendall Evans is an educated woman of excellent standing, but that cannot overcome the barrier in her way. The decision in the case of Evans v. Eureka Grand Lodge, etc., is supported by Clendenning v. Clendenning, 3 Mart. (N. S.) 438; Patton v. Cities of Philadelphia & New Orleans, 1 La. Ann. 98. The case of Hubbell v. Inkstein, 7 La. Ann. 252, also contains supporting language.

Addie Bell Kendall Evans inherited no rights in this policy from her son. All authors to which we have access agree that the beneficiary under a fraternal benefit policy has no vested right in the policy until the death of the member insured, and, if the beneficiary dies before the member, no rights under the policy pass from the beneficiary by inheritance, and the member has a right to substitute another beneficiary in place of the one deceased previous to himself. The policy sued on is one of the general class provided for by Act No. 256 of 1912.

We have found some authority in works on benefit societies based on decisions in other states that, when a party, designated as beneficiary in a policy of this kind, departs this life before the maturity of the policy, and the party who has obtained the policy also departs this life without having designated another beneficiary, the policy in such a case and all rights under it revert to the society by which it was issued. But some of the law

writers are not in accord with this view. In Ruling Case Law, vol. 19, subject, "Mutual Benefit Societies," § 101, that author makes the statement, pages 1313 and 1314: "While according to others the fund becomes payable to those who would be entitled to share therein under the statute of distributions." Again, page 1314: "If, however, the society waives all right to the fund, it seems that the Court may dispose of it equitably among any heirs, relatives or next of kin surviving."

In this case, the lodge in its answer does not claim the fund, but prays that it be paid to the parties, plaintiff or defendant, held entitled thereto. Act No. 256 of 1912 contains no provision whereby the proceeds of a policy, in a situation like the present, may revert to the society by which it was issued. The by-laws and ordinances of the lodge were not produced or offered in evidence, so we are not informed as to the lodge provisions on the subject in such a case. It is our conclusion that the policy in the situation we have in hand must be regarded as an asset of the estate of the deceased, James Tyler Evans, alias J. J. Evans, within the sense and meaning of the law, Civ. Code, arts. 448, 870, 871, and 902 et seq., and as such belongs to the plaintiffs by inheritance from their father.

The judgment appealed from, is, in our opinion, correct, but there will now be added in addition a penalty for a frivolous suspensive appeal of 10 per cent. on the amount due under the policy to be paid the plaintiffs by the defendant lodge. As thus amended and added to, the judgment appealed from is affirmed; Addie Bell Kendall Evans to pay the costs of her appeal, all other costs to be paid by the defendant lodge.