No. 4007

Second Circuit

(Second Division)

——

BROWN v. TEX. & PAC. RY. CO.

——

(December 9, 1931.   Opinion and Decree.)
(January 14, 1932.   Rehearing Refused.)

——

J. A. & J. H. Williams and C. H. McCain, of Colfax, attorneys for plaintiff, appellant.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, and Peterman, Dear & Peterman, of Alexandria, attorneys for defendant, appellee.

CULPEPPER, J. Plaintiff brought this action for damages as the alleged sister of Ernest Henderson who was struck and killed on the morning of July 8, 1928, by the defendant railway company's passenger train, a short distance south of Cypress Station, but within its yard limits, in the parish of Natchitoches.

It is alleged that the deceased was a single man, never married, 31 years of age, had no ascendants nor descendants, and no collateral relations other than petitioner, who was his sister and only legal heir at law. Plaintiff further alleged that the deceased was a devoted brother, a good provider, and his death has deprived her "of his support, maintenance, companionship, love, affection, advice and society." She prays for $4,000 for loss of support, $2,000 for loss of love and affection, $2,000 for loss of advice, and $2,000 for loss of society.

It is alleged that decedent's death was due solely to the gross fault and negligence of the defendant company, its agents and employees, for the following reasons: That at the time deceased was killed he was lying on or near defendant's railroad track, in plain view for several hundred yards in either direction; that he could have easily been seen by the engineer and

fireman in ample time for the engineer to stop the train before reaching deceased, but he failed and neglected to do so; and that the deceased "had a right to be there and was not a trespasser."

Defendant, in answer, admitted its passenger train struck and killed the deceased on the day and at the place alleged, but denies that same was negligently done. Defendant avers that Ernest Henderson; a trespasser, wandered upon defendant's right of way and laid down upon the ground with his head on the end of a cross-tie and his body stretched away from the railroad track, and apparently went to sleep; that the engineer, as the train approached, did not discover that it was a human being until too late to stop the train, due to a cattle guard nearby obstructing his view, and to the fact that the body was clear of the track.

Defendant denied plaintiff's alleged relationship to the deceased, her dependency upon him for support, and otherwise entered general denial.

There was judgment rejecting the demands of plaintiff, and she has appealed.

Plaintiff's right to recover is based upon article 2315 of the Civil Code. She alleges that the deceased left no ascendants nor descendants, no brothers, was never married, hence left no widow, and that plaintiff was his one and only sister. These allegations were denied by defendant. In the interpretation of the codal article relied on, the courts of this state have many times held that same applies to actual and legitimate relatives, and that its provisions cannot be extended to reach other persons to whom they do not expressly apply. It is also the law that the burden rests upon those who claim to be actual and legitimate

relatives to prove same. This is particularly true where the allegations of the existence of such relations are denied, as has been done in this case. Green v. New Orleans, S. & G. I. R. Co., 141 La. 120, 74 So. 717, 719; Spillman v. Texas & Pacific Ry. Co., 17 La. App. 473, 135 So. 66.

The evidence as to plaintiff's relationship to the deceased consists alone in her testimony as a witness on the stand in her behalf. There is no other testimony in the record, either by document or parole, upon the question of plaintiff's kinship to decedent, except mere references in certain portions of the testimony to plaintiff as the sister of the deceased, or reference to him as her brother. Plaintiff testified that the deceased was her whole brother, that they had the same father and mother, and that her father and mother were both dead. Asked if her father and mother were married by law, plaintiff answered:

"I guess so, I cannot tell what happened in those times, she been dead 21 years."

She testified that she did not know how long her father had been dead; that her father and mother had been separated before her mother died. She testified that she was a small girl when the deceased was born, and that her father and mother were, at the time, living together as man and wife, and that no one disputed that they were married. She also testified that her father and mother had lived together "in that country down there" as long as she could remember before deceased was born, and continued to live together until they separated a few years later.

Ernest Henderson, the deceased, was, so plaintiff testified, 31 years of age at the time of his death, and plaintiff was a few years his elder. We gather from plaintiff's

testimony that the home of her father and mother, for many years, was in the locality where plaintiff resides. If they were ever married, in all probability the records of Natchitoches parish would disclose that fact. Yet plaintiff has produced no evidence of any such record as existing, or that any such record ever existed and was later lost or destroyed. No witness was tendered to the court to testify that a marriage ceremony ever took place between the father and mother.

In order for plaintiff to have shown that her relationship to the deceased was that of legitimate brother and sister, she must have shown some written record of a marriage by their father and mother, or, in event such record had been lost or destroyed, such loss must have been shown in order to permit secondary or inferior evidence of a marriage. Green v. New Orleans, S. & G. I. R. Co., supra. Plaintiff produced no such evidence, nor did she offer to produce same. The sole testimony in this connection was the testimony of plaintiff herself, as above outlined. Such testimony, though not objected to, is wholly insufficient. As stated in the Green case, already cited, the fact that such testimony as was introduced was not objected to does not relieve plaintiff of the obligation to prove that her parents were legally married; and, as the best evidence on that subject would have been a copy of the recorded act, certified to by the clerk of court, it is to be presumed that she would have produced such a copy, if the original had been recorded, as it is also to be presumed that an original act would have been executed and recorded, if the marriage had ever taken place.

Marriage is considered in law in no other view than as a civil contract, and such marriages only are recognized by law as are contracted and solemnized according to the rules which it prescribes. C. C., arts. 86, 88. No minister or other person shall celebrate any marriage in this state, unless he shall have obtained previously a special license to him directed, issued, in this case, by the clerk of court of the parish in which one at least of the parties is domiciled. C. C., arts. 99, 100, 104. The marriage must be celebrated in presence of three witnesses, signed by the parties, and the act must be made in duplicate, appended to the license, one of which must be returned to the clerk of the court, and be by him filed and recorded in his office. C. C., art. 105. These laws have been in effect doubtless since long before the father and mother of plaintiff and Ernest Henderson became of marriageable age.

The provision of article 105 of the Code requiring the return and registry of the marriage act was added to the article by amendment in 1855 (R. S. sec. 2205). In Green v. New Orleans, S. & G. I. R. Co., heretofore cited, the court in discussing this question stated that:

"Since the amendment to article 107 (now article 105), requiring the return and registry of the act of marriage, to be a plain, elementary proposition that, in any case in which it is sought to prove a contract of marriage, the proponent should be required to produce a certified copy of the public record which the law declares shall be made of the contract, and that, until it be shown that such record has been lost or destroyed, no secondary or inferior evidence, offered to create a presumption that such contract had been entered into, should be received."

The court follows by saying:

"If that be not true, then there can be no reason why any contract, whether of sale, mortgage, or otherwise, which the law

requires to be reduced to writing and recorded, or any instrument, such as a will, required to be in writing, should not be proved by parol evidence, without an attempt to show either its original existence or its loss or destruction."

The law has been similarly interpreted and applied in many other decisions of the Supreme Court. Lynch v. Knoop, 118 La. 611, 43 So. 252; Vaughan v. Dalton-Lard Lbr. Co., 119 La. 61, 43 So. 926; Mount v. Tremont Lbr. Co., 121 La. 64, 46 So. 103, 16 L. R. A. (N. S.) 199, 126 Am. St. Rep. 312, 15 Ann. Cas. 148; Landry v. American Creosote Works, 119 La. 231, 43 So. 1016, 11 L. R. A. (N. S.) 387.

It was likewise so held by this court in Spillman v. Texas & P. Ry. Co., hereinabove cited.

In the case of Vaughan v. Dalton-Lard Lbr. Co., above cited, also cited with approval in the Spillman case, the court held that article 2315, under which this suit is brought, is sui generis, and is neither a law of inheritance nor a law of marriage. It was also held that a putative wife could not recover damages for the death of her husband. This being true, it is certain that a sister could not recover for the death of her brother when they are the issue of a father and mother who are not shown to have ever been married. There is no union, other than that solemnized in accordance with the codal provisions on marriage, the issue of which are entitled to recover under the article 2315 in question.

Since plaintiff has failed completely to show a legitimate relationship to the deceased, by virtue of which she must rely for recovery, we deem it unnecessary to pass upon the other features of this case.

For these reasons, plaintiff, we think, cannot recover. The judgment rejecting plaintiff's demands is therefore affirmed.