*464
 
 MOISE, Justice.
 

 Julia Scott Verrett appeals from a judgment denying her claims as a putative wifé and surviving partner in community to the Succession of her husband, ChristopherVerrett, and recognizing as his heirs, the defendants, Earl H. Verrett, Willie Verrett, Thelma Verrett Morgan, Louis Hark-less, Jr., and Genevia Harkless.
 

 In order to have a better understanding of the issue presented to this Court, we are listing chronologically the marital status of Verrett and the claimants’ relationship.
 

 1. On January 29, 1903, Christopher Verrett married Mary Dorsey. From that union, Earl and Willie Verrett were born. They are legitimate children. Verrett was separated from Mary Dorsey in 1907.
 

 2. After separating from Verrett, Mary Dorsey lived with Louis Harkless until her death on April 11, 1929. She assumed the name of Harkless. Two children were born of this living openly together. They bore the names of Louis Harkless, Jr., and Genevia Harkless and are admitted hy Louis Harkless in his swom testimony to be his children. These children were put in possession of one-fifth of Christopher Verrett’s estate.
 

 3. After separating from Mary Dorsey, Christopher Verrett contracted a second marriage to Lucy Feast on November 6, 1907. From this marriage, Thelma Vivian Verrett was born on November 8, 1911. Thelma claims to be the putative child of Christopher Verrett because of her mother’s marrying in good faith.
 

 All of the claimants in one, two and three, supra, were put in possession of the estate of Christopher Verrett in equal proportions at the same time and on the same petition to the exclusion of Julia Scott Verrett, the appellant.
 

 4.Christopher Verrett and Julia Scott were married in Jefferson Parish on October 8, 1927, as per certificate of marriage. They were living together as man and wife at the time of Verrett’s death in 1951. All of the succession property was acquired through the joint efforts and labor of Christopher Verrett and Julia Scott while they were living together.
 

 Julia Scott Verrett filed a suit'praying for the nullity of the judgment which sent and put appellees in possession of the succession property of Christopher Verrett. She prayed that if there were no divorce obtained from the marriage of Mary Dorsey and Christopher Verrett, then that she be recognized as the surviving putative spouse in community entitled to one-half of all property left by her deceased husband, Christopher Verrett. To this petition, the five appellees answered and urged the special defense that Julia Scott Verrett had not married Christopher in good faith, knowing at the time that he was not divorced from Mary Dorsey. There was a prayer for dismissal of her suit. From
 
 *466
 
 a judgment of dismissal, she prosecutes this appeal.
 

 No disavowal was made by Christopher Verrett as to the paternity of the Harkless children. Therefore, they are presumed to be the children of the marriage of Verrett and Mary Dorsey. Articles 184 and 191, LSA-Civil Code.
 

 Thelma Vivian Verrett Morgan was sent into possession of an undivided one-fifth of Christopher Verrett’s estate. She alleges that her mother, Lucy Feast, married Christopher Verrett in good faith, and that she is a putative child of the marriage.
 

 Articles 117 and 118 of the LSA-Civil Code which grant Thelma Vivian Verrett Morgan the right to enjoy the civil effects of the marriage of her mother and Christopher Verrett apply to her to the same extent and in the same manner as they do the appellant, Julia Scott Verrett.
 

 Article 117 of the LSA-Civil Code reads:
 

 “The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith.”
 

 Article 118 of the LSA-Civil Code reads:
 

 “If only one of the parties acted in good faith, the marriage produces its civil'effects only in his or her favor, and in favor of the children born of the marriage.”
 

 The sole question presented here is: Have the opponents carried their burden of proof by showing bad faith on the part of Julia Scott when she contracted marriage with Christopher Verrett, which marriage continued up until his death, a period of twenty-four years?
 

 In the Succession of Fields, 222 La. 310, 62 So.2d 495, 498, we held as. follows:
 

 .“The term ‘good faith’ as used in Articles 117, 118 of the LSA-Civil Code has been construed to mean an honest and reasonable belief that the marriage is valid and that no legal impediment exists thereto. Also, where a man and woman live together as husband and wife, there is a presumption that they have been validly married, and that the marriage, though null, was nevertheless contracted in good faith. * * * ”
 

 Julia Scott divorced her husband, Spencer Stewart, on November 3, 1911, before marrying Verrett on October 8, 1927, and therefore there was no legal impediment on her part to this marriage.
 

 The equivalent term for “good faith” is the Latin term “bona fide” which is used in the law. The converse of good faith is bad faith, and the Latin term is “mala fide.” A lack of good faith is usually bad faith.
 

 
 *468
 
 We held in the Succession of Fields, supra: “The burden of establishing bad faith rests on those who allege it.”
 

 In the Succession of Chavis, 211 La. 313, 29 So.2d 860, 862, we stated:
 

 “
 
 ‘It may
 
 well be that unconfirmed rumors or mere suspicions may reach a party and such as may even cause some question or doubt to arise as to the validity of a marriage, yet it would appear under our jurisprudence that under certain conditions a party may be in “good faith” so long as no certain or authoritative knowledge of some legal impediment comes to him or her, but to just what extent a party is called upon to make an investigation to ascertain whether there exists any legal impediment to his or her marriage in order to establish his or her status as a putative spouse, will depend ultimately upon the facts and circumstances in each individual case. Our courts have simply said that “a party alleging good faith can not close her ears to information or her eyes to suspicious circumstances. She must not act blindly or without reasonable precautions.” For a detailed and lengthy discussion on our jurisprudence on these questions, see: [Authorities.]
 

 “ ‘A review of this jurisprudence shows, unmistakably that the question of “good faith” in putative marriages is a question of fact and must be determined by the trial Court. It must be further noted that what constitutes “good faith” as here used is not an absolute quality but is relative, and depends ultimately upon the facts and circumstances in each individual case. There is danger in accepting the jurisprudence applicable in any particular case of this character as the established jurisprudence governing any other single case of this sort. The facts and circumstances in any particular case involving a question of good faith differ in some respect from the facts and circumstances in every other case. There is equal danger in accepting an isolated quotation, or even a whole decision based on the facts in a certain case as an authority on the facts which may exist in any other case. Our Appellate Courts, therefore, have established only with reasonable • certainty certain broad rules or principles of jurisprudence within which limits trial Courts must be governed.
 

 “ ‘It may be observed that there is' a well recognized rule that the burden of proof upon the question of good faith rests upon the person who alleges fraud or bad faith. In other words, where a man' and woman live together as husband and wife, there is a presumption that they have been validly married, and that a marriage, although in fact null, was contracted in good faith.’” See also: Funderburk v. Funderburk, 214 La. 717, 38
 
 *470
 
 So.2d 502; Ray v. Knox, 164 La. 193, 113 So. 814; Hondlenk v. John, 178 La. 510, 152 So. 67; Gauff v. Johnson, 161 La. 975, 109 So. 782.
 

 We are of the opinion that the appellees have not borne their burden of proof and did not show that Julia Scott was in bad faith. They did not prove that Julia Scott Verrett knew that Christopher Verrett had not been divorced from Mary Dorsey.
 

 The facts and circumstances of record are urgent and insistent to the effect that Julia Scott Verrett is a putative wife in community, and this Court should so ordain. Therefore, the judgment of the district court must be reversed and set aside, and Julia Scott Verrett is recognized as the putative wife of Christopher Verrett, deceased, and as such entitled to one-half of the property involved in this succession. The appellees are entitled to the ownership in equal proportions to the remaining half of the succession, and, in such proportions, they should be sent and put in possession.
 

 There are always matters in litigation such as this for the court of original jurisdiction to settle; therefore, this case is remanded to the Civil District Court for the Parish of Orleans for that court to follow the directions herein expressed.
 

 For the reasons assigned, the judgment of the Civil District Court for the Parish of Orleans is reversed, and the case is remanded.