89 So.2d 128

Clementine PRINCE

v.

Irita B. HOPSON and Victoria H. Albert.

No. 42582.

June 11, 1956.

Rehearing Denied June 29, 1956.

Roland R. Selenberg, Metairie, for appellants.

Herman & Herman, Abraham I. Kleinfeldt, New Orleans, for plaintiff-appellee.

HAWTHORNE, Justice.

Plaintiff-appellee, Clementine Prince, instituted this proceeding seeking to be declared the owner of a lot of ground purchased by her during the existence of her marriage with James Brough, deceased.[1] The defendants are Victoria H. Albert, surviving legal wife of James Brough, and Irita B. Hopson, sole issue

1. This action is evidently instituted under the Declaratory Judgments Act. No issue is made as to the application of this act by the litigants.

of the marriage between Brough and Victoria H. Albert and the only living child of Brough. The defendants claim the ownership of, or an interest in, this property.[2]

The facts giving rise to this litigation are as follows: James Brough, the deceased, married Victoria H. Albert on December 31, 1907, and of this marriage one child was born, Irita Elizabeth Brough, now wife of Willie Ray Hopson. In January, 1919, James Brough filed a suit against his wife for an absolute divorce on the ground of seven years' separation. A preliminary default was entered in that case, but final judgment was never rendered. Clementine Prince, relying upon the statement of James Brough that he was divorced from his first wife, was by a minister of the gospel married to Brough on May 19, 1919, after a marriage license to perform said ceremony had been duly obtained. After this marriage Clementine Prince and James Brough lived together as man and wife until his death on May 18, 1940, for a period of approximately 21 years, and in fact Clementine Prince did not know that Brough had not been divorced until she attempted to borrow money on the property here involved in 1955, some 15 years after his death. Moreover, his first wife, Victoria Albert, believed that she and the deceased were divorced, and she had contracted a marriage with Elijah Albert.

The property here involved, which is a lot of ground in the City of New Orleans, was sold according to the deed by Elizabeth McCluskey to Clementine Brough on March 4, 1939, during the time she and James Brough were living together as husband and wife. Although this deed names the vendee as Clementine Prince, wife of James Brough, it contains no recitation of paraphernality. The consideration named is $215 in cash.

After trial on the merits the district judge concluded that the marriage of James Brough and Clementine Prince was an absolute nullity, and that James Brough was in bad faith, and rendered judgment recognizing Clementine Prince Brough to be the owner of the property in question. From this judgment defendants have appealed.

There is no doubt that Clementine Prince contracted her marriage with James Brough in good faith; in fact, this is not even an issue in the case and is conceded by all parties. Moreover, in spite of the trial judge's ruling to the contrary, there is no allegation, no evidence, and no

2. Defendants in their answer state that they should be declared the owners in indivision of the property. In their prayer they pray that they be declared the owners in indivision of one-half of it. The law fixes their interest, and regardless of their pleadings this court will award the interest to the litigants in this case under what it deems to be the appropriate law, particularly under the prayer of all litigants for general and equitable relief.

contention that James Brough himself was in bad faith in contracting the second marriage with Clementine Prince. Victoria Albert in her answer states that both she and James Brough believed that they had been legally divorced, and there is no evidence to the contrary. The law is well settled in this state that where a man and a woman marry and live together as husband and wife, as James Brough and Clementine Prince did for 21 years, there is a presumption that they have been validly married, and that the marriage though null was nevertheless contracted in good faith. Succession of Braud, 170 La. 411, 127 So. 885; Succession of Chavis, 211 La. 313, 29 So.2d 860; Succession of Verrett, 224 La. 461, 70 So.2d 89, citing Succession of Fields, 222 La. 310, 62 So.2d 495.

Under these circumstances there is only ˉonclusion that can be reached, and ᴜ.ᴜt is that both Clementine Prince and James Brough were in good faith at the time their marriage was contracted, although this marriage was a nullity.

■ Since the marriage of Clementine Prince and James Brough was contracted in good faith, under Article 117 of the Civil Code this marriage produced its civil effects, and the existence of a community of acquets and gains between them is such a civil effect.

■ It is well settled in this state that property purchased in the name of either spouse during the existence of the community of acquets and gains is presumed to be community property. Arts. 2334, 2402, La.Civ.Code; Salassi v. Salassi, 220 La. 785, 57 So.2d 684. When a married woman buys property in her own name, failure to make a recitation of paraphernality in the deed is not fatal, and she may overcome the presumption of community by showing (1) that the funds constituting the price paid for the property were paraphernal funds, (2) that they were administered by her, and (3) that they were invested by her. Houghton v. Hall, 177 La. 237, 148 So. 37; Succession of Farley, 205 La. 972, 18 So.2d 586; Betz v. Riviere, 211 La. 43, 29 So.2d 465; Cameron v. Rowland, 215 La. 177, 40 So.2d 1. The proof necessary to overcome this presumption must be strict, clear, positive, and legally certain. Cameron v. Rowland, supra, and authorities therein cited.

■ To overcome the presumption in the instant case Clementine Prince relies principally on her own statements that the cash consideration of $215 with which she acquired the property in her own name was given to her by her husband as a manual gift, and that consequently the sum with which she purchased the real estate here involved was her separate property. She also relies on certain statements alleged to have been made by the deceased. Of course this latter kind of evidence is the weakest sort of proof and should be

received with the utmost caution. Davidson v. American Paper Mfg. Co., 188 La. 69, 175 So. 753, 114 A.L.R. 1044, and cases there cited; Gibson v. Fitts, 189 La. 753, 180 So. 509; Meridian Land & Mineral Corporation v. Bagents, 211 La. 627, 30 So.2d 563. We do not think that the evidence upon which plaintiff relies is sufficiently clear, positive, and legally certain to overcome the presumption that the property was community property.

Since Clementine Prince and James Brough both contracted their null marriage in good faith, the question then arises: How should we divide this property acquired during the coexistence of both the first and the second marriage, or during the existence of the putative community? The claimants are Victoria H. Albert, the legal wife; Irita B. Hopson, legitimate child of the first marriage, and Clementine Prince, putative wife of James Brough.

In Waterhouse v. Star Land Co., Ltd., 139 La. 177, 71 So. 358, 360, this court said:

"It is a fixed rule of property in the state of Louisiana that property which has been earned during the existence of a putative marriage belongs one half to the legal wife and the other half to the reputed wife. The children of the respective marriages have therefore no interest in it. * * *"

In support of this statement the court relied on the cases of Patton v. Cities of Philadelphia and New Orleans, 1 La.Ann. 98; Hubbell v. Inkstein, 7 La.Ann. 252; Succession of Navarro, 24 La.Ann. 298, and Jermann v. Tenneas, 39 La.Ann. 1021, 3 So. 229, Id., 44 La.Ann. 620, 11 So. 80. To these cases we might add Abston v. Abston, 15 La.Ann. 137, and the later cases of Ray v. Knox, 164 La. 193, 113 So. 814, and Succession of Fields, 222 La. 310, 62 So.2d 495, 499.

In Succession of Fields, supra, this court quoted with approval from Ray v. Knox, supra, as follows:

" 'And the rule was correctly laid down in Patton v. [Cities of] Philadelphia [and New Orleans], 1 La.Ann. 98, and has since been followed, that where a man marries, and afterwards contracts a second marriage without the first having been dissolved, the community property acquired during the coexistence of said two marriages belongs exclusively and in equal shares to said two wives as long as the second wife is in good faith, i: e., as long as she has no certain knowledge of the existence of the first marriage, and the bigamous husband has no share whatever in said property. Cf. [LSA] R.C.C. Art. 117 supra.' "

The famous case of Patton v. Cities of Philadelphia and New Orleans, supra, is the source from which this rule of property

springs. In that case Abraham More-house was married to Abigail Young, by whom he had children and whom he abandoned in the State of New York. He came to Louisiana and here in bad faith as clearly shown by the facts contracted a second marriage with Eleonore Hook, untruthfully representing himself as a widower. Children were also born of this putative marriage. In disposing of the property left by Morehouse at his death, this court applied the Spanish law, and concluded that the property should go one-half to the legal wife and one-half to the putative wife, the forced heirs getting nothing, on the theory that Morehouse had wronged the second wife by creating a bigamous marriage and for his wrong the second wife had a claim in damages against the husband equal to his share in the community. The court applied the Spanish law because Morehouse's death in 1813 gave rise to the cause of action before the incorporation in our Civil Code of Articles 117 and 118 (Articles 119 and 120 of the Code of 1825). Articles 117 and 118 read as follows:

"Art. 117. The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith.

"Art. 118. If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor,

and in favor of the children born of the marriage."

The holding in the Patton case has been followed ever since by this court, even though, as pointed out in Hubbell v. Inkstein, supra, decided in 1852, the decision in the Patton case was under the former laws of the country (Spanish) which had been repealed at the time of the decision of this court in the Hubbell case. The court in the Hubbell case deduced that the reasoning of the Patton case had equal force under both the Spanish law and the system of law existing at the time of that decision. We note, however, that in the Hubbell case the court did not mention Articles 119 and 120 of the Code of 1825 (now Articles 117 and 118).

Be that as it may, in none of the cases cited above which rely on the Patton case and apply the rule of law there announced, was the good faith of both parties to the second marriage considered or discussed in connection with Article 117 of the Civil Code. Moreover, in these cases the good faith of both parties to the second marriage was not a factor. Again, where the property acquired during the putative marriage was divided between the two wives, the facts in most of those cases clearly show that the husband in contracting a second marriage was in bad faith. Such is not a fact in the case which we now have under consideration, as both parties to the second marriage here were in good faith,

and the rule of law announced in the Patton case cannot be reconciled with the express provisions of Article 117 of our Civil Code in regard to a situation where both parties are in good faith. To follow the Patton rule in the instant case and to give to the putative wife the husband's one-half of the property acquired during the existence of the putative community would be to deny to him and his heirs the civil effects of the second marriage, in the teeth of the provisions of Article 117.

■ James Brough being in good faith in his second marriage, this marriage also produced its civil effects as to him, and accordingly he became the owner of an undivided one-half of all property acquired during the existence of the putative community, for under the provisions of Article 2402 of the Code community property consists, among other things, of the estate which the parties to the marriage may acquire during such marriage by purchase, even though the purchase be only in the name of one of the spouses and not of both. Thus, although the property in the instant case was purchased in the name of the second wife, it fell into the putative community. Accordingly when James Brough died one-half of this property belonged to his succession. He was survived by one child, Irita B. Hopson, who therefore inherited his share of the community property under Article 915 of the Civil Code which provides: " * * * In

the event the deceased leave descendants, his or her share in the community estate shall be inherited by such descendants in the manner provided by law."

We have disposed of James Brough's one-half of the community property acquired during the putative marriage, but the serious question remains: What division shall we make of the remaining one-half of this property?

■ As we have heretofore pointed out, James Brough's second wife, Clementine Prince, was also in good faith when the marriage was contracted and remained in good faith until after his death. Under the provisions of Article 117 she would therefore be entitled to one-half of all property acquired during the existence of the putative community although the marriage was a nullity. However, during this entire time the legal community was also in existence, and it likewise was not dissolved until James Brough's death, and during the coexistence of both these communities the property was acquired. Under Article 2406 of the Civil Code the effects which compose the community of acquets and gains are divided into two equal portions between the husband and the wife or between their heirs at the dissolution of the marriage. Consequently under the provisions of this article Victoria Albert, the legal wife, is also entitled to the remaining one-half of such property. The provisions of our law which give to

each of these wives one-half of the property are of equal dignity and rank. However, it is impossible to give to each wife under these laws one-half of the entire property, as there remains to be divided between them only one-half of the property because James Brough's one-half is inherited by his daughter. The question then presented is: How should the remaining one-half of the property be divided between the legal wife and the putative wife?

Articles 117 and 118 of the Louisiana Civil Code are literal translations of Articles 201 and 202 of the French Civil Code, and, as heretofore pointed out, their provisions first appeared in our Code as Articles 119 and 120 of the Code of 1825. For a solution of this problem, then, we think it is proper to look to the French commentators who have had occasion to discuss it.

Under the views of Aubry and Rau; Baudry-Lacantinerie; Colin and Capitant; and Ripert and Boulanger, where both parties to a putative marriage are in good faith the husband is entitled to his share of all property acquired during the existence of both the legal and the putative marriage under Article 201 of the French Code, and accordingly he or his heirs take as civil effects one-half of the entire property acquired from the date of the legal marriage to its dissolution. See Colin et Capitant, 1 Traité de droit civil (1953) 375, n° 623; Ripert et Boulanger, 1 Traité élémentaire de droit civil de Planiol (5e éd. 1950) 384, n° 1050; Baudry-Lacantinerie, 3 Traité de droit civil (3e éd. 1908) 505, n°ˢ 1912–1924; Aubry et Rau, 7 Cours de droit civil françias (5e éd. 1913) 68–71. These commentators then point out that, as to the remaining half, the putative wife can have no claim to any portion of the property acquired during the legal marriage, for this would be outside her community, whereas the legal wife certainly is entitled to one-half of all property acquired during the legal marriage. As to the property acquired during the putative marriage, the legal wife under the provisions of the law is entitled to one-half thereof since her marriage was in existence at that time and the community was not dissolved until the husband's death. However, under the provisions of Article 202 of the French Code the putative wife because of her good faith is also entitled to this same one-half of the property. The commentators then say that since these claims are equal in nature on the same object, the only division that can be effected is to split the property acquired during the putative community and give each wife one-half. See Aubry et Rau, 7 Cours de droit civil français (5e éd. 1913) 75, 76, n. 24; Baudry-Lacantinerie, 3 Traité de droit civil (3e éd 1908) 516-518, n°ˢ 1930–1932. See Comment, The Civil Effects of a Putative Marriage, 1 Loy.L.Rev. 54 (1941).

Under the view which these commentators deem to be the most equitable, in the instant case the legal wife, Victoria H. Albert, and the putative wife, Clementine Prince, would each be entitled to an undivided one-fourth interest in the property in question.

The French commentators also allow the children to inherit community property from a father who contracted a second marriage in bad faith, which seems to us to be correct under Article 118 of our Code. See Colin et Capitant, 1 Traité de droit civil (1953) 376, n° 624; Comment, The Civil Effects of a Putative Marriage, 1 Loy.L.Rev. 54, 67 (1941). Of course we are not here called upon to, nor do we think we should, go that far because of our decision in Patton v. Philadelphia and the cases which followed the ruling announced there—holding, in effect, as we have pointed out above, that children do not inherit community property acquired by their father during a second marriage contracted in bad faith. However, we see no reason why we should not accept such a solution where both parties to the marriage are shown to be in good faith, and by adopting this solution we certainly are following the provisions of Article 117 by allowing to the husband who is in good faith the civil effects of his second marriage, and we are also following the provisions of the article as to the putative wife's share as far as we can possibly do so by recognizing her

to be entitled to the civil effects of her marriage, which she also contracted in good faith.

Although the lot here in question was purchased for $215, the record shows that after it was bought certain improvements were built on it, and it was stipulated during the trial that the total amount spent for these purposes was approximately $4,800, the greater portion of which was spent by Clementine Prince after her husband's death. Consequently there is reserved to her the right to claim from these two defendants in a proper proceeding the proportionate share of the enhanced value of the property resulting from improvements placed upon it after the death of James Brough.

For the reasons assigned the judgment of the district court is annulled and set aside, and it is now ordered, adjudged, and decreed that there be judgment declaring the property here involved together with the improvements thereon to be·owned in indivision in the proportion of one-half to Irita B. Hopson, one-fourth to Victoria H. Albert, and one-fourth to Clementine Prince, said property being more particularly described as "Lot 19, in Square 578, bounded by N. Villere, Andry, Flood and N. Robertson Streets, and measures 32 feet front on N. Villere Street, by a depth between parrallel lines of 170 feet, 9 inches and 6 lines, and starts at a distance of 120 feet from the corner of N. Villere and

Andry Streets". There is reserved to plaintiff, Clementine Prince, the right to claim from the defendants the proportionate share of the enhanced value of the property resulting from the improvements placed upon it after the death of James Brough. All costs in these proceedings are to be paid by the litigants in the proportion of one-fourth by plaintiff-appellee and three-fourths by defendants-appellants.

FOURNET, C. J., absent.