Louise Taylor BOUDREAUX et al.,
Appellants,

v.

Ella Yokum TAYLOR and Geneva Lawless
Smith, Appellees.

No. 3920.

Court of Civil Appeals of Texas.

Waco.

Jan. 11, 1962.

902

———◆———

Sample & Walker, Beaumont, for appellant.

W. G. Walley, Jr., Everett Lord, Beaumont, for appellee.

WILSON, Justice.

Four sisters were declared illegitimate by the judgment appealed from, in which a take-nothing judgment was rendered against appellants. In our opinion the judgment is erroneous, and it is reversed.

Appellants are three of the daughters and the son of a deceased daughter of James Taylor and Cecilia Joseph whose Louisiana marriage the trial court concluded was void. Appellants were denied any interest in their father's estate in this non-jury action against appellee, his fourth and surviving wife. Findings and conclusions were filed. The material facts, found or undisputed, are as follows:

April 17, 1896 James Melton Taylor obtained a Louisiana license to marry Stella B. Johnson, and on the same day executed a marriage bond required by Louisiana law. The return of the minister and the marriage certificate, however, show the marriage ceremony took place the previous day, April 16. We find no evidence to support the court's finding that they were married April 10, 1896. November 6, 1896 Stella bore a child (who disclaims herein), and in 1897 James and Stella separated. The asserted impediment of this marriage is the basis on which the subsequent marriage of the parents of the four sisters was held void by the trial court.

In "the latter part of 1897", according to Stella B. Johnson's testimony, James Taylor and Cecilia Joseph drove to Stella's home. "He stopped to speak to me and to introduce me to his future wife", and Cecilia said, "I am the one that is going to marry your husband."

March 21, 1898 a Louisiana license was issued authorizing the marriage of Taylor and Cecilia Joseph and a marriage bond was executed. The court finds a marriage ceremony was performed in Louisiana pursuant to this license. This public marriage ceremony was performed with attendants and bridesmaids in a church by a minister on the afternoon of March 23, 1898 in the same community in which the minister, bridesmaids, bride, groom and Stella Johnson resided. James and Cecilia immediately began living together and maintaining a home as husband and wife in that same community. From 1900 to 1909 seven daughters were born to them, three of whom died. The remaining four were declared by the judgment to be illegitimate. During all these years the record shows James, Cecilia and these children were continuously recognized as a family in the community. James and Cecilia continued to live in Louisiana, recognizing each other as husband and wife, rearing their family, recognizing and acknowledging their children as such, for about thirteen years. They separated in 1911, when James came

to Texas. The court found James commenced residence in Texas in 1909 or some time thereafter.

The court found further that the 1896 marriage of James Taylor and Stella Johnson continued until dissolved by a divorce decree December 18, 1909. The only evidence in the record of a decree of this date is a certified copy of a Louisiana judgment, with blank docket number, dissolving bonds of matrimony in a cause styled "——— Taylor vs. Ellila Taylor." There is nothing to identify James Taylor and Stella Johnson with this document, although Stella testified she was divorced from Taylor in 1909.

In 1925 James obtained a Texas divorce from Cecilia, alleging in the petition they were lawfully married in 1898. Cecilia continued to live in Louisiana until she died in 1930. James married defendant-appellee in Texas in 1931 and they resided in Texas until he died intestate in 1952.

■ The trial court concluded the status of the children of Cecilia, born while she cohabited with James Taylor, was governed by Louisiana law, and that rights of inheritance were governed by the law of Texas. No complaint is made of these conclusions. The general rules are variously summarized as being that legitimacy of the child is determined initially by the law of the place of birth, or where the parents (or one or the other of them) were domiciled. Madden, Persons and Personal Relations (1931) p. 347; Goodrich, Conflict of Laws (1937) 435; Story, Conflict of Laws, Sec. 87; Stumberg, Conflict of Laws (1951) p. 332; IV Vernier, American Family Laws (1936) Sec. 241, p. 150 et seq.; Beale, Conflict of Laws (1935) Vol. II, p. 704; Leflar, Conflict of Laws (1959) 344; Minor, Conflict of Laws, 215; American Law Inst. Restatement, Conflict of Laws, Sec. 137; 12 Tex.Jur.2d Sec. 5, p. 306; 15 C.J.S. Conflict of Laws § 14, p. 915; 11 Am.Jur. p. 316. We are not concerned, however, with a question of conflict of laws, since our disposition would

be the same under either Louisiana or Texas law, the controlling principles being substantially the same in both.

■ In Texas the presumption of validity of a marriage duly shown to have been contracted "is one of the strongest, if, indeed, not the strongest, known to law. The presumption is, in itself, evidence, and may even outweigh positive evidence to the contrary. The strength of the presumption increases with the lapse of time, acknowledgments by the parties to the marriage, and birth of children; and the fact that the legitimacy of a child may be involved is a factor in sustaining the validity of the marriage". Texas Employers' Ins. Ass'n v. Elder, 155 Tex. 27, 282 S.W.2d 371, 373. In the Elder case it was held a stipulation that one spouse never obtained a divorce did not show the marriage was not dissolved in a suit by the other; and facts negativing annulment did not destroy a presumption of divorce. It was held that upon proof of subsequent marriage "the presumption itself supplied the evidence" that a prior marriage had been dissolved and the subsequent marriage was valid; the burden of proving the contrary being upon the party attacking its legality, and no burden resting on plaintiff to show the prior marriage was dissolved. The Supreme Court said, "Courts will gladly resort to any allowable presumption to avoid the holding that Ethel Mae and Elder were never married and that the mother of Dade's children is not his wife." A common-law marriage was there in question; here it is a formal public ceremonial marriage. There a living wife's rights were at issue; here the children's interests are involved, where both parents are deceased.

In Louisiana also "The presumption of marriage and legitimate filiation is one of the strongest known to the law, and in favor of a child asserting its legitimacy this presumption applies with peculiar force", as its Supreme Court has frequently held. Cameron v. Rowland, 1945, 208 La. 663, 23 So.2d 283, 292 and cases cited. In Patterson v. Gaines, 6 How. 550, 47 U.S. 550,

12 L.Ed. 553, the Supreme Court, in a case where it was asserted the impediment of a prior marriage invalidated a subsequent marriage so as to make children of the latter illegitimate, summarized Louisiana law: "If the fact of marriage be proved, nothing can impugn the legitimacy of the issue, short of the proof of facts showing it to be impossible that the husband could be the father."

■ When these presumptions are applied it is apparent the evidence in the present case will not support a determination the daughters of James and Cecilia were illegitimate.

■ There is another impelling reason these children are to be held legitimate. Art. 117, Civil Code, West's Louisiana Statutes Ann., in effect since 1825, provides that a null marriage "produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith". Art. 118, Civil Code, provides, "If only one of the parties acted in good faith, the marriage produces its civil effects" in favor "of the children born of the marriage". The innocent party to even a bigamous marriage is in good faith "so long as he or she has no certain knowledge of any impediment thereto", and "if there is any doubt as to the good faith of the parties, it is to be resolved in favor of good faith." Funderburk v. Funderburk, 1949, 214 La. 717, 38 So.2d 502, 504 and cases cited; Texas Co. v. Stewart, 1958, La.App., 101 So.2d 222, 227; Succession of Pigg, 1956, 228 La. 799, 84 So.2d 196, 197; Prince v. Hopson, 230 La. 575, 89 So.2d 128.

■ The civil effects attributed by these statutes to the children of a putative marriage include legitimacy and right of inheritance. Miller v. Wiggins, 1922, 149 La. 720, 90 So. 109, 112; Prince v. Hopson, 1956, 230 La. 575, 89 So.2d 128, 131. This was true under the Roman civil law, the law of France and Spain and the Code Napoleon. It has been the law of Louisiana since 1804. Gaines v. Hennen, 24 How.

553, 65 U.S. 553, 16 L.Ed. 770. An absolutely null marriage so contracted produces these civil effects. Succession of Fields, 1953, 222 La. 310, 62 So.2d 495, 499; Smith v. Smith, 43 La.Ann. 1140, 10 So. 248.

Art. 2581, Vernon's Ann.Civ.Stat. (Prob. Code, Sec. 42) provides, "The issue also of marriages deemed null in law shall nevertheless be legitimate." See Defferari v. Terry, 128 Tex. 521, 99 S.W.2d 290; Lewis v. Ames, 44 Tex. 319, 341, 342–344; Hartwell v. Jackson, 7 Tex. 576, 580; Cameron v. Cameron, Tex.Civ.App., 103 S.W.2d 464, 466, writ refused; and Consolidated Underwriters v. Kelly, Tex.Com.App., 15 S.W.2d 229; 8 Tex.Jur.2d pps. 520–521.

■ The trial court found as a fact that at the time of the marriage ceremony of James Taylor and Cecilia Joseph, both "had knowledge of the existence of the lawful marriage between the said James Taylor and Stella B. Johnson Taylor", at such time. We have examined the record carefully. There is no evidence supporting this finding. The only circumstance which we have found, or to which appellee points to support such inference, is the testimony of Stella Johnson quoted above that "in the latter part of 1897" Cecilia was introduced to her by James, and said, "I am the one that is going to marry your husband." Aside from the rule in both Louisiana and Texas that declarations of parents will not be received to bastardize or make children illegitimate, if this be construed as any evidence that Cecilia knew the marriage of Taylor and Stella had not been dissolved "in the latter part of 1897", it was not evidence of such knowledge the following year when she and Taylor were married.

■ Though common-law marriage is not recognized in Louisiana, the presumption of innocence to support a putative marriage producing civil effects is so strong as to require clear and positive evidence to overcome it, and it was not destroyed in this case. We will not summarize the evi-

dence admitted under hearsay rule exception that Stella and James were divorced prior to the marriage with Cecilia. It is presumed Cecilia contracted the marriage in good faith and the four daughters were legitimate issue of James and Cecilia. Succession of Chavis, 1947, 211 La. 313, 29 So.2d 860, 863; Succession of Braud, 1930, 170 La. 411, 127 So. 885, 887; Succession of Verrett, 1954, 224 La. 461, 70 So.2d 89, 91; Succession of Fields, 1953, 222 La. 310, 62 So.2d 495, 498; Succession of Primus, La.App., 1961, 131 So.2d 319. There is no evidence to destroy the presumption.

Appellees' position is that the children could not have been legitimated under Louisiana law because under Arts. 199–213 Civil Code, Tit. 7, Ch. 3, natural parents may only accomplish legitimation by their subsequent marriage, or by notarial act; and by Arts. 200 and 204 only those children whose parents could have contracted marriage at the time of conception can be legitimated. The contention is untenable. Tit. 7, Ch. 3 deals with legitimation by acts of the parents: either subsequent marriage coupled with acknowledgment, or notarial act under Art. 203, in the event of subsequent legal marriage.

■ Arts. 117 and 118, Tit. 4, Ch. 4, however, concern status not dependent on parental acts. These provisions deal, not with subsequent marriage, but the legal consequences established by legislation which flow from a putative marriage, founded on good faith of one or both parties. Succession of Marinoni, 1936, 183 La. 776, 164 So. 797; 31 Tulane L.Rev. 551; 22 Tulane L.Rev. 340; 18 Tulane L.Rev. 290, 297; 6 Tulane L.Rev. 306. The distinction lies in the difference between legitimation on the one hand, and legitimacy on the other. The former requires parental act; the latter is a status acquired at birth. The provisions are distinct.

■ So is it in Texas. Art. 2581 (Probate Code Sec. 42) provides subsequent marriage (with recognition, prior to 1955)

legitimates children previously born; but it further makes legitimate the issue of "marriages deemed null in law." Under the latter provision, legitimacy "results from legislative declaration, and not from the subsequent acts of the parents after the child is born." The two provisions are supplemental and distinct. "It is manifest that the Legislature by the language of the first provision, makes available to the parents the means of legitimating a meretricious relationship, and by the language of the second declares legitimate the issue of a relationship designated as a 'marriage deemed null in law' ". Defferari v. Terry, 128 Tex. 521, 99 S.W.2d 290, 291. In the latter case it was determined that good faith to create a putative marriage was absent, and there was only an illicit relationship shown; but that where a putative marriage was contracted in good faith, despite an impediment which made the marriage null in law, the issue would be legitimate under the last provision.

We hold the four daughters of James Taylor and Cecilia were legitimate. The judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.