157 So.2d 577 (1963)
Cabel MELANCON, Jr., et al., Plaintiffs-Appellants,
v.
Mrs. Adies Melancon SONNIER, Defendant-Appellee.
No. 933.
Court of Appeal of Louisiana, Third Circuit.
October 30, 1963.
Rehearing Denied December 3, 1963.
*578 Jacob H. Morrison, New Orleans, for plaintiffs-appellants.
Dugas, Bertrand & Smith, by Lucien C. Bertrand, Jr., Lafayette, for defendant-appellee.
Before TATE, SAVOY, and HOOD, JJ.
TATE, Judge.
This is an action brought by various heirs of Cabel Melancon, Sr., to disavow his paternity of the defendant, Mrs. Adies Melancon Sonnier. The basis of the disavowal action is her alleged illegitimacy when born to Cabel Sr.'s former wife long after the spouses had voluntarily separated.
Alternatively, the plaintiff heirs also allege, and the defendant ("Adies") denies, that Cabel Jr., a plaintiff, is entitled to be accorded the rights of a legitimate child of a second marriage contracted in good faith by Cabel Sr.
The central issue of this suit involves the determination of who is the heir of Cabel Sr.: (a) Cabel Jr., a plaintiff, or (b) Adies, the defendant, or (c) both of them?
The trial court held that the present action to disavow the legitimacy of Adies was not timely brought and had prescribed. The court further denied the plaintiffs' alternative demand to have Cabel Jr. recognized as the good faith putative issue of Cabel Sr.'s second marriage, upon its finding that the second marriage was invalid. The effect of this judgment by the trial court is to recognize the defendant Adies Melancon Sonnier as the heir of Cabel Melancon, Sr.
The plaintiffs appeal.

Facts.
Cabel Sr. was married to the defendant Adies's mother ("Evella") in 1922. A legitimate child was born of this union in St. Martin Parish in November, 1925, although the child died seven months later.
Shortly thereafter, Cabel Sr. and Evella moved to New Orleans. There they separated, Evella returning to the Breaux Bridge-Henderson area of St. Martin Parish, while Cabel Sr. remained in New *579 Orleans, which is some 170 miles from Breaux Bridge.
On October 24, 1927, Cabel Sr. filed suit in New Orleans for divorce from Evella. Service was obtained upon her in St. Martin Parish. Although a preliminary default was obtained, a final judgment of divorce was never entered decreeing the dissolution of the marriage of Cabel Sr. and Evella.
A daughter, Adies, (the defendant) was born to Evella on October 6, 1928, almost a year after Cabel Sr. had filed suit to divorce her. The notation on Adies's baptismal certificate is to the effect that her father was a man other than Cabel Sr.
According to the allegations of the plaintiffs' petition, Cabel Sr. was married in St. Bernard Parish to a second wife on April 29, 1928, of which union one child was born on October 5, 1929, namely. Cabel Jr., one of the plaintiffs.
Cabel Sr. died in 1952. This disavowal suit was filed in St. Martin Parish in 1961, the parish of Adies' residence. It was precipitated by the defendant Adies' claim to be recognized as Cabel Sr.'s heir, filed by her late in 1960 in the New Orleans succession proceedings of Cabel Sr.'s mother.
By the plaintiffs' appeal, they pose two primary questions: (1) Based upon the presumption of legitimacy, is the defendant Adies Melancon Sonnier ("Adies") entitled to be recognized as the legitimate child of Cabel Sr., even though she was born after Cabel Sr. and her mother (his first wife) had separated?; (2) In view of the invalidity of Cabel Sr.'s second marriage, is Cabel Jr. nevertheless entitled to be recognized as the good faith putative issue of this second marriage?

1. Legitimacy of Adies, the Defendant.
The situation before us concerns a child born to a wife voluntarily separated from her husband, but from whom she has not been judicially separated or divorced.
In such instance, even though the wife may have been living with a man other than her husband at about the time of conception or birth, nevertheless the child born is presumed to be the child of the undissolved marriage, subject to timely filed disavowal actions by the husband or his heirs. Succession of Verrett, 224 La. 461, 70 So.2d 89; cf. also, Succession of Saloy, 44 La.Ann. 433, 10 So. 872; Burrell v. Burrell, La.App. 1 Cir., 154 So.2d 103. (The same presumption does not obtain where a child is born three hundred days or more following a divorce or judicial separation. LSA-C.C. Arts. 187, 188; Singley v. Singley, La.App. 1 Cir., 140 So. 2d 546.)
A very short prescriptive period is provided within which a husband (or his heirs, if he die before the time expires) must bring a suit to disavow his paternity of a child born to his wife; otherwise the action is forever barred, LSA-C. C. Arts. 191, 192. See, e. g., Kuhlman v. Kuhlman, 137 La. 263, 68 So. 604. Pertinently to this action, the husband has two months to file the disavowal action after he learns of the birth of the child to his wife, if said birth was concealed from him.
The trial court held that the present disavowal action had prescribed. We find it unnecessary, however, to discuss the contentions of the plaintiffs to the effect that the trial court erred in its assigned reasons for this holding; for, even if the plea of prescription is overruled, the plaintiffs have not produced the proof necessary to overcome the very strong presumption of the legitimacy of all children conceived during the existence of a valid marriage.
The husband is presumed to be the father of all children conceived during the existence of a marriage; even in the case of a voluntary separation of the spouses, cohabitation is always presumed. LSA-C.C. Arts. 184, 188. However, pertinently to this action, (a) if cohabitation *580 was physically impossible because of the remoteness of the husband from the wife, the usual presumption of paternity does not obtain, LSA-C.C. Art. 189; also (b), if the birth was concealed from the husband, he can disown a child as not his because of a proven adultery, LSA-C.C. Art. 185. Both of these grounds are urged by plaintiffs herein as causes for disavowal of the defendant Adies.
See Comment, "Presumption of Legitimacy and the `Action en Desaveu'": Parts I and II, 13 La.Law Review 587 (1953); Parts III and IV, 14 La.Law Review 401 (1954)especially Part III, "A Survey of the Louisiana Jurisprudence", at 14 La.L.Rev. 401 and following. See also Comment, "Action en DesaveuChallenging the Presumption of the Husband's Paternity", 23 La.L.Rev. 759 (1963).

a. Physical impossibility of cohabitation. (LSA-C.C. Art. 189).
At 14 La.L.Rev. 409, "summarizing the jurisprudence", it is stated that "in order to prove physical impossibility of cohabitation, the husband would have to show that the spouses were a great distance apart during the time of conception and also show the whereabouts of both spouses at all times during that period." The presumption of legitimacy of a child born during the marriage "cannot be overcome except by the proof that the husband was so far away from the wife, when the child was conceived, that cohabitation was `physically impossible'", Feazel v. Feazel, 222 La. 113, 62 So.2d 119, 121.
In the present instance, the husband Cabel Sr. lived in New Orleans and his separated wife Evella in Henderson, some 170 miles away. The only testimony that he had not had access to his wife in Henderson in 1928, about the time the child Adies was conceived, was the testimony of his two half-brothers, teenagers at the time, to the effect that to their knowledge he had not left New Orleans then or afterwards and that they should have known of it since they were living with him.
Even if we assume that this testimony at the trial some 34 years later has some probative forceoverlooking these witnesses' lack of knowledge of other incidents of Cabel Sr.'s life during this period of their youth (such as the birth and death of Cabel Sr.'s first child in 1925 and 1926) ___, we note that the testimony of the one-time paramour of Evella, the reputed father of her daughter (the defendant Adies), is simply to the effect that at an unspecified time and dates and for an unspecified period they had "took like that" and "lived in the same house" without marrying and during this time she "come and go".
Thus the testimony does not prove that Evella did not visit Cabel Sr. in New Orleans, nor for that matter does the evidence that he lived in New Orleans and she some 170 miles away sufficiently prove the physical impossibility of access and cohabitation so as to satisfy the heavy burden placed upon a husband or his heirs seeking to prove illegitimacy on such ground. See law review comments above-cited; see, e. g., somewhat similar facts and holding in Vernon v. Vernon's Heirs, 6 La.Ann. 242 (1851) (husband, South Carolina; wife, Kentucky; two children born during seven years' separation).

b. Disavowal for adultery if birth concealed. (LSA-C.C. Art. 185).
Assuming (without deciding) that the birth of the child (Adies) sought to be disavowed was proven to have been concealed from the husband, the testimony of Evella's onetime paramour is the only evidence of adultery. That the defendant Adies may have been conceived of this adulterous relationship, is somewhat indicated by the circumstance that her baptismal certificate shows the name of this man as her father, although the record does not indicate from whom such information was obtained.
*581 As stated, at the trial some 34 years after Adies' birth, the testimony of this paramour furnishes the only actual proof of an alleged adultery. While he admits that he lived with Evella for a period (during which time she "come and go", he said), his and the other testimony in the record is completely lacking in any indication as to the alleged or approximate dates of this relationship, nor is there the slightest proof that this adulterous friendship occurred during the period that Adies was conceived or born in 1928.
The 1927 divorce suit by Cabel Sr. against Evella was grounded on her alleged adultery prior to 1927 with yet another named man in New Orleans.
This evidence thus does not sufficiently prove the time of any proven adultery as being committed at a time coinciding with or approximating the conception of the child, so as to satisfy the heavy burden of proof of a husband or his heirs seeking to overcome the presumption that the husband or the mother is the father of all children conceived during the marriage, Feazel v. Feazel, cited abovea presumption according to this decision which "is the strongest presumption known in law", 62 So.2d 120.
Having so found, it is unnecessary for us to discuss whether, even if an adultery had been sufficiently proved, the disavowal action would still have fallen because it was not physically impossible for the husband also during this time to have cohabited with his wife from whom he was separated. See Williams v. Williams, 230 La. 1, 87 So.2d 707 and Trahan v. Trahan, La.App. 3 Cir., 142 So.2d 571, certiorari denied, and discussion of them at Comment, 23 La.L.Rev. 759 (1963).
We therefore affirm the action of the trial court in dismissing this action insofar as it sought to disavow the defendant Adies as the legal daughter of Cabel Sr. by virtue of being born during the existence of his undissolved marriage with her mother Evella.

2. Status of Cabel Jr. as Son of Second Marriage.
We now reach the alternative claim of Cabel Jr. to be recognized as a lawful issue of a good faith putative marriage between his mother and Cabel Sr.
As previously noted, Cabel Sr. had filed a suit for divorce from Evella, his first wife, on October 24, 1927. Although a preliminary default was entered on November 22, 1927, no final judgment of divorce was ever decreed. Thus, the marriage between Cabel Sr. and Evella was never dissolved.
Because of this existing valid marriage, the marriage of Cabel Sr. with his second wife ("Mary") on April 29, 1928, was undoubtedly invalid, since a married person is incapable of contracting another marriage. LSA-C.C. Art. 93. In rejecting the claim of Cabel Jr. to be recognized as a legitimate child of Cabel Sr., the trial court simply noted that the burden of establishing the validity of Cabel Sr.'s second marriage with Mary was upon Cabel Jr., as plaintiff, and that he failed to carry this burden, citing King v. McCoy Bros. Lumber Co., La.App. 2 Cir., 147 So. 2d 77.
We think our learned trial brother fell into error in this regard. The McCoy case involved a plaintiff wife suing for benefits as widow of her fourth husband, whereas her second and third husbands, from whom she had never been divorced, were still alive; the court held that under these facts the plaintiff widow was not in good faith in entering into a fourth marriage, so that it was invalid.
Here, however, Cabel Jr. is the child of a marriage which was invalid, and there is no question of his bad faith.
The child of a marriage contracted in good faith by at least one of the parties *582 thereto is legitimate as to both. LSA-C.C. Arts. 117, 118. The burden of proving bad faith on the part of those contracting the putative marriage is upon the party contending that such was entered into in bad faith. Succession of Fields, 222 La. 310, 62 So.2d 495; Succession of Chavis, 211 La. 313, 29 So.2d 860.
This burden was obviously not discharged by the defendant Adies. At the time of the trial in 1962, both Cabel Sr. and his second wife Mary were dead, but four relatives who lived near them testified that, subsequent to Cabel Sr.'s filing his suit to divorce Evella, Cabel Sr. and Mary had married, had lived together as man and wife, and had been formally divorced in 1939. They were without question accepted as legally married husband and wife.
There is not the slightest proof, nor is there any allegation, that Cabel Sr. or Mary knew that Cabel Sr.'s prior marriage was technically undissolved and so that therefore they were in bad faith in contracting this second marriage; the proof is totally insufficient to prove any bad faith on their part in so doing. See Prince v. Hopson, 230 La. 575, 89 So.2d 128; Succession of Verrett, 224 La. 461, 70 So.2d 89; Succession of Fields, cited above.
Nevertheless, the defendant Adies through her able counsel further suggests that the second and allegedly putative marriage is not sufficiently proved, because the evidence in the record is devoid of a marriage certificate or other testimony as to an actual ceremony. Cf., Comment, "The Necessity of Ceremony in a Putative Marriage", 10 Tulane L.Rev. 435 (1936).
Counsel relies on Brown v. Brown, La. App. 2 Cir., 123 So.2d 778 and Brown v. Texas & P. R. Co., 18 La.App. 656, 138 So. 221. Both of these cases are distinguishable, however, as simply holding that the self-serving testimony of a party with interest did not under the circumstances constitute adequate proof that a marriage had actually occurred.
Here, in the instant case, we have the unrebutted testimony of four members of Cabel Sr.'s family, who lived in his immediate neighborhood in New Orleans, that he had married Mary in 1928, lived with her as husband and wife, and that Cabel Jr. was regarded as a child of this lawful union. The 1929 birth certificate shows that Cabel Jr. was registered as the lawful son of this marriage. In addition, in 1939 Cabel Sr. obtained a divorce from Mary, and the allegations of the petition in this divorce suit state that he was married to Mary in St. Bernard Parish by a Judge Crispo, a Justice of the Peace.
As stated in Cameron v. Rowland, 208 La. 663, 23 So.2d 283, 285, "* * * marriage, like other contracts, may be proved by any species of evidence not prohibited by law which does not presuppose a higher species of evidence within the power of the party. * * * [This] rule has special application where petitioner is not a spouse seeking to prove a marriage, in which he or she was a party and who would be presumed to know all the facts and circumstances attending such marriage, but a child who has not and cannot be supposed to have, in regard to the marriage of his deceased parents, the same means of information."
In the cited decision, there is also no evidence of any ceremony, but a child's suit to be recognized as the issue of a marriage between her father and mother was sustained on the basis of the general reputation in the community and other circumstances corroborating the fact that a marriage had occurred, even though the child was unable to produce any evidence of the time or place of the marriage or any witness thereto. See also Succession of Gaines, 227 La. 318, 79 So.2d 322.
The defendant's pleadings, as well as the cross-examination of the plaintiffs' witnesses by the defendant's counsel, does not indicate that any question was raised as to the second marriage on the ground it had not actually occurredrather, the thrust of the attack upon Cabel Jr.'s right to be *583 recognized as a lawful heir was directed at the invalidity of the marriage of his parents, because it was contracted at a time when the previous marriage of the father had not been dissolved, since the preliminary default in the divorce action seeking to dissolve it had not been confirmed.
This is a suit by a child of a marriage which had been treated as valid by all concerned for some thirty-odd years, even to the extent that the parties to it had secured a formal divorce decree to dissolve it. The child of this union is here forced some thirty-odd years later to defend the existence of the marriage of his parents, long after both of them were dead, along with their knowledge as to where the marriage license had actually been procured or as to where, if any place, a copy of the marriage certificate was preserved.
Considering all these circumstances and the legal principles above enumerated, we think that Cabel Jr. has adequately proved that Cabel Sr. and his second wife Mary were actually married, even though such marriage was invalid because of the impediment of Cabel Sr.'s prior marriage. Since this second marriage was contracted in good faith by the parties thereto, Cabel Jr. is entitled to be recognized as a legitimate son and heir of his father, Cabel Sr. The trial court judgment will be amended accordingly.

Decree.
For the reasons stated above, the trial court judgment is affirmed insofar as it dismissed the plaintiffs' suit to disavow the defendant, Mrs. Adies Melancon, wife of Andrew Sonnier, as the legitimate daughter of Cabel Melancon, Sr.; however, said judgment is amended insofar as it denied the plaintiffs' alternative demand to have Cabel Melancon, Jr. recognized as the good faith putative issue of Cabel Melancon, Sr.'s second marriage (with Mary Saladino), and judgment is accordingly entered in his favor and against the defendant, recognizing decreeing him, Cabel Melancon, Jr. to be the good faith putative issue of Cabel Melancon Sr.
The trial and appellate court costs of these proceedings are assessed one-half to the plaintiffs and one-half to the defendant.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.