NEW ORLEANS, APRIL, 1881.          425

Troxler et al. vs. Colley, Sheriff, et al.

---

## No. 8144.

### H. D. TROXLER ET AL. VS. C. COLLEY, SHERIFF, ET AL.

Property acquired by an heir at a partition sale, and paid for by means of his heritable share, is his separate property, and does not fall into the Community of acquets and gains, as property acquired during marriage.

This vexatious question fully discussed and examined, and the authorities reviewed.

Difference between the text of the Code of 1808 and that of the Code of 1825.

Decisions in cases of Hache vs. Ayrand, 14 An. 178, and Breaux vs. Carmouche, 15 An. 588 overruled in that respect.

A PPEAL from the Twenty-Sixth Judicial District Court, parish of St. Charles. *Hahn, J.*

---

*Breaux & Hall* for Plaintiffs and Appellants:

First—Property purchased at a sale for a partition among co-heirs, and paid with the inheritance of the heir is separate. 2 An. 930; 4 An. 803; 5 An. 743; 17 L. 296; 1 R. 347; 4 R. 115; 1 L. 522.

Second—Partition is a sort of exchange among co-heirs. C. C. 1382.

Third—Plaintiffs have a judgment putting them in exclusive possession as sole owners of this property; creditors of any party whom it is alleged has an interest in such property cannot disregard such judgment.

Fourth—Oral proof admissible to show that notes given by co-heirs were surrendered to them in partition of estate. Squier vs. Stockton, 5 An., 743.

*Jas. Legendre* and *L. De Poorter* for Defendant and Appellee:

First—C. C. 2332, 2334, 2402, 2406, 1341, 1342, 1343, 1344, 2616.

Second—The general rule is that all property purchased during marriage by either husband or wife is community property, even should the purchase be made with the separate funds either of the wife or husband. 1 L. 206; 10 L. 148; 17 L. 296; 1 R. 431; 9 R. 210; 5 An., 610, 611; 6 An., 731; 7 An., 92; 10 An., 784; 11 An., 326; 20 An., 531; 24 An., 521; 26 An., 552; 32 An., 162.

Third—An heir who acquires at a sale made to effect a partition does not become sole owner under his ancient title as heir, but is invested with a new title as purchaser, and if he be

**426** SUPREME COURT OF LOUISIANA,

Troxler et al. vs. Colley, Sheriff, et al.

married, the purchase is presumed to be made on account of the community, unless he declare his intention to be otherwise in the act by which his acquisition is evidenced. 14 An., 178, Hache vs. Ayrand; 15 An., 588, Breaux vs. Carmouche.

Fourth—Property purchased by the husband at a sheriff's sale, under a judgment in his favor, belongs to the community, which is to be debted, when settled, in his favor with the price paid. 18 L. 361, German vs. Nicholls.

Fifth—This intention of separate investment on the part of the husband, who is the head of the community, must be expressed in the act of purchase, otherwise the property purchased falls into the community. 14 An., 618.

Sixth—Where the separate funds bear no proportion to the value of the property substituted, such acquisition belongs to the community. Bouligny vs. Fortier, 16 An., 215.

The opinion of the Court was delivered by

Todd, J. The sheriff of the parish of St. Charles seized under a writ of *fi. fa.*, issued to enforce payment of a judgment in favor of F. Brugier against Widow F. E. Troxler, an undivided interest in certain immovable property as belonging to the judgment debtor.

The sale was enjoined by the plaintiffs, who claimed to be owners of the property. They allege title to it by inheritance from their father, the late François Emilien Troxler, who inherited the same from his father, François Troxler, also deceased.

The defendant resists the claim of the plaintiffs, and denies their ownership of the property; and avers that it belongs to the Widow Troxler, the judgment debtor; that the entire property was purchased by her late husband, François Emilien Troxler, the father of the plaintiffs, during his marriage with the said Mrs. Troxler, and belonged to the community between them; and that the interest seized was acquired by her as surviving widow in said community upon the dissolution of the marriage by the death of her husband, and was owned by her at the date of the seizure.

There was judgment in the lower court, rejecting plaintiffs' demand and dissolving the injunction, and from this judgment the present appeal was taken.

We gather from the record the following facts bearing upon the subject of this controversy:

François Troxler, the grand-father of the plaintiffs, died in 1854, leaving an estate, of which the land in dispute formed part.

In July of that year, the entire property of the estate, movable and immovable, was sold under an order of court to effect a partition among the heirs, and the plantation, of which the land in controversy was part, was adjudicated to three of the sons and heirs of the deceased, of whom the father of the plaintiffs was one.

In October of the same year (1854) a partition was made between the brothers, adjudicatees at the partition sale, and another brother, in whom an interest was acknowledged—the plantation being divided into

four parts, François Emilien Troxler, receiving that part the undivided half of which is seized in this case as belonging to his surviving widow. These proceedings, the sale and act of partition, took place during the marriage of the said François Emilien Troxler and Mrs. F. E. Troxler, the wife who survived him, and the judgment debtor as stated. It is shown that the property acquired by the said François Emilien Troxler by virtue of these proceedings, did not exceed his heritable interest in the estate of his father; and that, in the adjudication and subsequent partition, no money was paid; but the property in question was settled for out of his share, or by his share, in the succession.

Under these facts the question arises, and it is the sole question for our determination, whether this property fell into the community then existing between François Emilien Troxler and his wife, or became his separate property. If the former, the half of it belonged to his surviving widow on the dissolution of the marriage, and was properly seized for her debt; if the latter, it was transmitted to his heirs, the plaintiffs, who claim it in this action.

The decisions of our courts have not been entirely harmonious and uniform on this subject, and this fact has induced us to give the question the closest study and investigation, and to review all the decisions bearing on it and the general principles of law applicable thereto.

Art. 2334 C. C. declares: "The property of married persons is divided into separate property and common property. Separate property is that which either party brings into the marriage or acquires during the marriage by inheritance or by donation made to him or her particularly. Common property is that which either party brings into the marriage or acquires in any manner different from that above declared."

The plaintiffs contend that their ancestor acquired this property by inheritance, and hence it never fell into the community; the defendants, that it was acquired, not by inheritance, but by purchase, and hence comes under the last clause of the article quoted, and under Art. 2402 of the Code, declaring property *purchased* during the marriage, whether in the name of the husband or the wife, to belong to the community. And the point of contestation is whether this particular property was acquired by inheritance or by virtue of a sale and purchase.

By inheritance is meant the right to a thing derived from another by virtue of heirship, the right to succeed to the property or estate of a person who has died intestate; the transmission of such right from the ancestor to the heir; property thus derived is also termed an inheritance.

The legal heir, who is called to the inheritance, acquires the rights of the deceased immediately on his death, and is considered as seized

of those rights from the moment of the death, and the possession of the deceased continues in the heir. C. C. 940, 941, 242.

If the father of the plaintiffs had been the sole heir of his father, François Troxler, and his estate had consisted alone of the property in controversy, of which he had gone into the possession of as such heir, there could be no question but that he acquired this property by inheritance. It is equally clear that if the estate consisted of this and other property, as it did, and that the deceased had a number of heirs, as was the case in this instance, and those heirs seized of the estate on the death of their father, had partitioned that estate in kind among themselves, that the portion falling to each heir would be acquired by inheritance. It sometimes happens, though, where there are a number of heirs, that the estate that falls to them is of such a character that it is impossible for each heir to get his share of it by a partition in kind; that such mode of partition is impracticable. In that case the law provides that the estate shall be sold at public auction, and the rights or interests of the heirs in the property is transferred to the proceeds, and these proceeds, which represent the property, are divided. And it is further provided that, if one or more of the heirs should prefer to have a portion of the property in kind instead of a share of the proceeds, he can become a purchaser to the amount of his heritable share, and is not bound to pay any surplus beyond this, until his portion is definitively fixed by a partition. C. C. 1343.

The object and purpose both of a partition and of a licitation or sale of the succession property to effect a partition, is a common one, that is, to ascertain and define the respective interests of the heirs; to transfer the general and undivided interest which each heir has in all and every part and parcel of the property, movable and immovable, to specific property or a specific amount of money, which stands in lieu of and as a representative of such general and undivided interest. In substance, this general interest in all the property of the succession, the heir may be said to exchange, by the effect of these proceedings, for the specific thing he receives as the result of them. If considered as an exchange, it is the reciprocal exchange which the heir makes of his general interest in the entire succession, which he has acquired by direct inheritance from the deceased, and which is his separate property by virtue of such inheritance, for a specific part thereof, a specific thing. If it be an exchange, there can be no question that property received in exchange for separate property whether of a husband or wife is of the same identical character as that which was given for it. 3 L. 233; 9 An. 185.

From this analysis of the subject, it would seem a perversion of the law to say that an heir to whom a particular part of an estate falls by

a partition proceeding, whether it be a partition in kind or by licitation, derives his right and title to such property by virtue alone of such proceeding *per se*, and that in case of licitation, it was the adjudication, and the adjudication alone, that conferred the right, although he may not have paid one dollar for the property. It seems to us that such a construction of the law evinces a total disregard of the spirit of it. Now it is certain that though an heir may derive a right directly and immediately from a proceeding by licitation, to take possession of a specific piece of property that had belonged to the succession, with the title of owner, yet the source or origin of his right to do so was not the licitation itself, and the adjudication under it, but from the ownership of this very property by his ancestor, and the transmission of this right of the ancestor by inheritance; and the proceeding by licitation was but the means by which the proper measure of the right, thus transmitted, might be made in favor of the heir, and his interest under it fixed and defined.

We are, however, told by the counsel for the defendant, that the law terms this licitation a sale, and are referred to the language of the article of the Code, which declares that all *purchases* made during the marriage by the husband fall into the community.

Words alone, used in a law, do not of themselves, considered without reference to the context and subject-matter, fix and control the meaning of that law. And courts, to ascertain the true intent of a law, will not be governed in construction of it solely by isolated words or terms used in the body of it, but will subject such words and terms to the proper analytical tests to determine their real meaning, and make them subservient to the manifest or declared object of the law. Thus, in regard to these words "sale" made to effect a partition and "purchases" at such sale by the heir. The proceeding, in a certain sense, is a sale proper with all the requisites of a public sale. The property is exposed to the highest and last bidder, and if that highest and last bidder be not one of the heirs but a stranger, and the whole or part of the succession property should be adjudicated to such stranger, who pays the price of the adjudication, then, undoubtedly, there would be a public sale and a purchaser at such sale. But suppose the property, when exposed, is adjudicated to the heir or heirs, who pay no part of the price bid, because not required to do so, and who subsequently satisfy their bid, not by paying money, but by means of their hereditable share in the succession, and out of such share? Such a proceeding cannot properly be called a sale and purchase, because lacking some of the essential elements of such contract. He does not acquire the thing by payment of a price in money for it, but receives it as by a prior right,

and through which, then and there his ownership under a prior heritable right is determined and declared.

The whole confusion on this subject has been caused, we apprehend, by the change made in the Code of 1808 by that of 1825, as to the language and terms bearing on this point.

Article 174 of the Code of 1808 declares that " the cant or licitation is not a sale; it is a mode of partaking, one of the effects of the action of partition of a thing held in common; it is the complement of the partition."

These words are omitted in the corresponding article of the Code of 1825 and the present Code, which provides that, where a partition in kind is impracticable " the judge at the instance of any one of the heirs shall order that it be sold," etc.

It is admitted that, under the Code of 1808, and the settled jurisprudence of the State with reference to cases arising under the article of that Code referred to, property acquired by an heir of the succession under such proceeding, remained his separate property, and did not fall into the community. Savenat vs. Breton, 1 L. 520; Porter vs. D. E. Peyster, 18 L. 355.

This mode of partition, as it existed under the Code of 1808, corresponds with the proceeding termed licitation in the French jurisprudence; and which Pothier, after giving the origin of the word in matters of partition, defines thus (Pothier, Vente, Nos. 638, 639): " We understand by licitation, an act by which the co-heirs or other co-proprietors of a thing by undivided interests, put it up at auction *among themselves* in order that it shall be adjudged to belong wholly to him offering the most and bidding last, under a charge upon such last bidder to pay to each of his co-proprietors a part in the price equal to the undivided interest which each of the said co-proprietors had in the property offered previous to the adjudication."

The difference, and the only difference between the licitation thus defined and the sale, as it is termed, to effect a partition among co-heirs, under the present Code, is, that by the former the property was exposed at auction to be bid for by the heirs alone, the bidding to be confined to them, and all persons excluded; whereas, by the latter, the bidding is left free to all persons, and the property is adjudicated to the highest and last bidder, though such bidder be a stranger.

The heir, at such licitation, to whom the property was adjudicated, was thought or considered as holding or acquiring by inheritance direct from the intestate. Pothier, Ib.

We cannot see where, under the present system, the property of a succession is exposed at public sale, ordered and made to effect a partition among the heirs, and one of the heirs should become the adjudi-

Troxler et al. vs. Colley, Sheriff, et al.

catee of a specific part of such property, and that part the equivalent or less than the heritable share of such heir in the succession, and granted or adjudicated to him, and received by him in satisfaction or in consideration of such share, why the same rule should not apply, as where he receives and holds it by licitation under the former system. If he acquires in the one case by inheritance, the reasons are equally strong and pertinent why he acquires by the same right or the same mode in the other case. In fact the distinction that is sought to be drawn between the two cases seems to us to rest alone on the baldest technicality.

Our views on this point are sustained by the earlier decisions of this Court, after the change of the law referred to was made. Stroud vs. Humble, 2 An. 930; Squier vs. Stockton, 5 An. 743; Succession of Van Rensallier, 6 An. 803. And they are opposed by the decision in the case of Breaux vs. Carmouche, 15 An. 588, and also to some extent by that in the case of Hache vs. Ayrand, 14 An. 178; and these decisions, in so far as they are in conflict with the doctrine herein enunciated, and to the cases cited above, which support the views now expressed, may be considered overruled.

The fact that at the partition sale mentioned several of the other heirs of François Troxler became the joint adjudicatees with the father of the plaintiffs of undivided portions of the succession property, and that it was only by a subsequent act of partition between these co-heirs that the property in question fell to him, has been urged, as excluding the right or title to the property of the said François Emilien Troxler, thus acquired, from the operation of the principles herein laid down. We see no force whatever in this position. The fact mentioned does not affect the question or vary the rule. It may be said that by the said adjudication made to the several heirs of portions of the property in indivision, they but received together or jointly the portions of the estate that they were entitled to by right of the inheritance, and the partition entered into soon after only had the effect to terminate the indivision, and define and fix the respective rights of these heirs in the property previously severed from the estate by the adjudication.

The judge a quo held that the property seized belonged to the judgment debtor, Mrs. F. E. Troxler, as surviving widow of François Emilien Troxler, and was liable to seizure for her debt. The judgment was erroneous, and must be reversed.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and proceeding to render such judgment as should have been rendered by the lower court, it is ordered, adjudged and decreed that the plaintiffs be, and they are hereby declared to be, and recognized as joint owners of the property

described in the petition, and that the injunction against the sale of the same be perpetuated, defendants to pay costs of both courts.

The Chief Justice takes no part in this opinion, on account of relationship to some of the parties; and Mr. Justice FENNER recuses himself, having been of counsel in the case.