SAVOY, Judge.
John C. Tarver, Sr., instituted suit to recover damages for an alleged trespass upon his property by the defendant, Columbia Gulf Transmission Company, while installing a high pressure underground gas pipeline.
On August 25, 1953, plaintiff executed a general “multiple-line” agreement covering all of his twenty acre tract of land situated in Rapides Parish, with Gulf Interstate Gas Company, the defendant’s predecessor in title, authorizing Gulf to lay and construct a pipeline across his property. The first high pressure gas line was laid across the property in the same year.
*765 Around July 15, 1965, the defendant asserted its rights under the 1953 “multiple-line” right-of-way agreement, entered upon the plaintiff’s property and proceeded to lay a second high pressure gas line. It is at this point where the evidence becomes controverted, the plaintiff claiming that defendant and its employees entered his property without right, cut his fence and trespassed upon his property against his will; the defendant claiming on the other hand that it had a legal right to enter the property under the 1953 agreement and construct a second pipeline upon payment of a reasonable sum of money or in the alternative that plaintiff was estopped from requiring removal of the pipeline by his acquiescence.
The trial court held that plaintiff had failed to prove that a trespass had been committed, and it is from this ruling that plaintiff has appealed.
Mr. Tarver, Sr., testified on his own behalf that he first received notice in April or May of 1965 that the second pipeline was to be constructed when he spoke with Mr. Cook, the defendant’s right-of-way man. Mr. Tarver said that Mr. Cook asked for an additional fifty feet of right-of-way, and he told him he just didn’t know. However, no agreement or understanding was reached, and about one month later plaintiff spoke with a Mr. Campbell who still wanted a right-of-way agreement, but again no agreement was reached. It was at this time that plaintiff was told of defendant’s multiple rights to cross the 20 acre tract.
Mr. Tarver then stated that he told Mr. Lovell, an employee of the defendant, not to cut the fence and made him tie it back pending some agreement. Three days later Mr. Lovell returned and told plaintiff he was going to exercise their multiple rights and was going to cut the fence. When questioned on cross-examination plaintiff testified as follows:
“Q. . Then the two of you, that is you and the construction crew cooperated during the construction of this line across your property?
“A. Well, there was no — to a certain extent I guess we did, there was things that they wanted to do that I wouldn’t permit they wanted to bury stumps and things like that on my land and I refused that, but I tried not to give them any trouble.
“Q. Actually it was a very pleasant relationship between you and these men, was it not ?
“A. Those men that were working, yes, they were just working men.”
Mrs. John C. Tarver, Sr. and her son, John C. Tarver, Jr., testified in effect that although they were conscious and nervous because of the existence of the pipeline so near the house, nevertheless, they slept well at nignt and led a normal life.
Mr. Vinton P. Freemin, an employee of defendant, testified that his job consisted of talking with landowners about buying rights-of-way and paying for damages inflicted. He testified as follows regarding the agreement between plaintiff and defendant :
“Q. Do you remember any discussions with Mr. Tarver regarding the existence of a right-of-way agreement between the company and Mr. Tarver?
“A. Well, the few times that I’ve met him he said that he knew we had the right to build the pipeline but we were off on the amount of money that we were offering and that was all that was said.”
Mr. Jules Lovell, a right-of-way inspector for defendant, testified that he did not remember delaying three days when the crew allegedly put the fence back up. He also said that he was in daily contact with plaintiff at his store while the construction work was in progress. When asked whether Mr. Tarver told him not to come on his property, he answered:
“A. Yes, s;r, he never told me not to come on his property.
*766 “Q. If either the fence cutting crew or the grading crew or the clearing crew had received such instructions from Mr. Tarver would it have come to your attention?
“A. It would have come to my attention.”
Defendant’s chief inspector in charge of construction, Mr. Robert Ray, when asked whether he had any conversations with Mr. Tarver during the construction, replied:
“A. During construction — Mr. Tarver came into the office that we had in town, in Pineville, and talked to me about it and he didn’t ask my advice, he come in just talking about the construction and he said that he had no intentions of stopping us or holding us up, but I don’t know his asking price what he asked, but I — it wasn’t any of my problem, I had nothing to do with right-of-way or settling the damages or anything like that, but I knew that he was asking for one price and the company wasn’t willing to pay his price.”
We feel that after a thorough review of the entire record in this case, we cannot say that the trial judge abused the discretion placed in him to resolve disputed questions of fact, and there is more than enough evidence present which, when reasonably construed, supports the conclusions reached by the trial judge.
In this Court plaintiff has filed a plea of liberative prescription of ten years. This plea, having been filed after the case was submitted to this Court for decision, comes too late to be considered. See LSA-C.C.P. Article 2163.
For the reasons assigned the judgment appealed from is hereby affirmed at appellant’s costs.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.