DIXON, Judge.
This suit was to partition a mineral lease. The % interest of H. J. Heart-well is subject to conflicting claims by his creditors. Prior to 1965 Heartwell was the operator of the lease. In 1965 Braswell took over the operation. In the course of the operation, Braswell advanced funds to pay for Heartwell’s pro rata *198 share of the operating costs. In this action Braswell attempts to assert a privilege “for the preservation of the property,” superior to the claims of the other privileged creditors. Heartwell’s % interest was subject to three special mortgages and a judgment and a tax lien. The tax lien has prescribed, and is no longer in contest. The trial court denied Bras-well’s claim of privilege, from which he appeals.
The other appellants are Carl L. Morris and Continental-Emsco; their opponent is World Service Life Insurance Company. Morris and Emsco have special mortgages secured by Heartwell’s interest dated April, 1964 and November, 1965. Funds from the partition sale totaling $26,698.46, attributable to the Heartwell interest, are on deposit to be distributed among Heart-well’s creditors. The trial court rendered judgment for World Service Life Insurance Company, from which Morris and Continental-Emsco have appealed.
On January 8, 1962, World Service Life Insurance Company loaned Heartwell $50,000. A check for that amount was issued on that date. On January 20, 1966 there was another check to Heartwell for $600.00, and on June 28, 1966, a similar check for $800.00, which World Service alleges were also loans. In the pleadings filed by World Service it is alleged that the balance due from Heartwell is $17,820.-62, with interest at 8% per annum from January 23, 1968 and 10% of the principal and interest as attorneys’ fees; that the loan was secured by the pledge of the collateral note and mortgage in the amount of $65,000 bearing the date of January 8, 1962. The officer of World Service first testified in accordance with the allegations of the pleadings. He apparently was not a party to the loans made to Heartwell, and testified that there was no other note that he knew of representing the original indebtedness of Heartwell to World Service, but that the indebtedness was represented by the $50,000 check and the two subsequent checks advanced by World Service to Heartwell. It was subsequently discovered that World Service had in its “legal files” a $50,000 note signed by Heartwell dated January 8, 1962 and payable to the order of World Service’s predecessor company. The officer of World Service who testified in the case was of the opinion that the $50,000 note dated January 8, 1962 had been “superseded” by the $65,000 note dated January 8, 1962. There is a difference in the interest provisions in the two notes.
It is the contention of Morris and Continental-Emsco that World Service cannot recover in excess of the balance due on the principal indebtedness, regardless of the provisions of the collateral note and mortgage; that, since the principal indebtedness was represented only by checks, and there was no proof of an agreement to pay interest or attorneys’ fees, the interest and attorneys’ fees provisions of the collateral note and mortgage are not operative; that World Service is prevented by the allegations of its pleadings and the testimony of its officer from now taking a position that the $50,000 note represented the original principal indebtedness, and functions as a “hand note.”
We agree that World Service should not recover an amount in excess of the principal indebtedness.
Appellants Morris and Continental-Emsco argue that the payments admitted by World Service total $45,045.69, leaving a balance due on the original $50,000 loan of $4,954.31, which should be the limit of its recovery.
World Service, of course, attributed all payments to both interest and principal, and calculated the balance to be $17,820.62.
There is no impediment to the disclosure by World Service of the true facts surrounding the loan to Heartwell, insofar as it is possible for World Service to determine the facts. The court was satisfied that the original allegations of World *199 Service reflected an honest belief in the facts alleged. Appellants did not change their position to their detriment in reliance on the allegations by World Service that the original indebtedness was represented by a check and that the $65,000 note was held in pledge as security. Ap-pellees’ allegation did not amount to a judicial confession referred to in C.C. 2291.
The trial court pointed out to appellants that a continuance might be granted, but appellants did not plead surprise and declined to request a continuance.
World Service was the holder of the $50,000 note. R.S. 7:191. The holder may sue. R.S. 7:51. There is a presumption that consideration was given for the instrument. R.S. 7:24.
The holder is presumed to be a holder in due course (R.S. 7:59) and may enforce payment of the instrument against all parties liable. R.S. 7:57.
Therefore, World Service is entitled to recover on the $50,000 note. (See Strange v. Albrecht, 190 La. 897, 183 So. 209).
Plaintiffs’ judgment was computed according to the provisions of the $65,000 note. However, the terms of the two instruments are such that there will be no difference in the computation of the amount due. The $50,000 instrument (on a “Texas Standard Form”) provided for interest at the rate of 6% from the date until maturity, with 10% per annum interest on past due principal and interest, and 10% attorneys’ fees.
The $65,000 collateral mortgage note provided for 6% per annum interest from date until paid, 10% attorneys’ fees, and 8% per annum interest on unpaid principal and interest accrued after demand or after default. Both notes were demand notes. On January 30, 1968, in these proceedings, World Service made its legal demand against Heartwell. The maximum interest sought by World Service is 8%.
Consequently, there will be no change in the amount found due World Service.
The appellant Braswell contends that the money he advanced for the operation of the lease which was attributable to the share owned by Heartwell gives him a lien on the lease interest “for the preservation of the thing.”
C.C. 3224, which creates the preservation privilege, is located in the chapter entitled “Of the Privileges on Particular Movables.” Article 3262 is concerned with the ranking of privileges, and, although it mentions the privilege for the preservation of the thing, it does not establish a new privilege on immovables. State ex rel. Ernest Realty Co. v. Moore, Blane & Merklein, 183 La. 927, 165 So. 147; 9 Louisiana Law Review, 370, 372-373. Neither does C.C.P. 4626 purport to establish a privilege. It is merely a procedural device by which a co-owner might recover in the partition proceeding the amount he has expended for the preservation of the thing.
Therefore, the judgment appealed from is affirmed; the costs of this appeal to be borne equally by appellants.