307 So.2d 740 (1975)
Barbara PRIMEAUX, Plaintiff-Appellant,
v.
Gerald David LIBERSAT, Sr., Defendant-Appellee.
No. 4754.
Court of Appeal of Louisiana, Third Circuit.
January 23, 1975.
Rehearing Denied February 24, 1975.
Writ Granted April 24, 1975.
*741 John Rixie Mouton, Lafayette, for plaintiff-appellant.
Roger C. Edwards, Abbeville, for defendant-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
*742 DOMENGEAUX, Judge.
Gerald David Libersat, Sr. and Barbara Primeaux were married on October 27, 1960. A judicial separation subsequently took place between the parties on May 24, 1973. Shortly thereafter Barbara Primeaux filed suit for partition of the property belonging to the former community of acquets and gains. Her husband, the defendant herein, answered his wife's petition and acknowledged that all of the property listed as belonging to the community was in fact community property, with the exception of a certain 2.365 acre tract (on which the matrimonial home was located) and some 22 shares of stock in two family owned enterprises. After a trial on the merits judgment was rendered decreeing (a) the property not in dispute as belonging to the community, (b) the 2.365 acre tract, with all buildings and improvements situated thereon to be community property, and (c) the shares of stock to be the separate property of the defendant. From said judgment plaintiff has appealed attacking the assigned status of the stock, alleging that it should be considered community, rather than separate property. Defendant has answered the appeal citing as error the finding that the aforementioned 1.365 acre tract and accompanying home belonged to the community of acquets and gains.
The only issue before this court is whether the trial judge was correct in his assessment of the status of the tract of land and shares of stock. We will discuss both categories of property separately.

THE 2.365 ACRES OF LAND
The following described property was owned by Murphy Libersat, father of the defendant, at the time Gerald and Barbara P. Libersat were married:
"That certain tract of land lying and being situated in Irregular Section 52, Township 12 South, Range 3 East, Third Ward, Vermilion Parish, Louisiana, containing 2.365 acres, bounded North by Henry Richard and Henrietta Richard, South by State Highway No. 335, East by Bernard Libersat, Jr., and West by the vendor. Together with all buildings and improvements thereon situated, all as will more fully appear by plat of Noy O. Lewis, dated July 21, 1969. . . ."
Some time thereafter the married couple moved onto the above-mentioned tract, residing in the old Libersat family home.
On July 23, 1969, by cash deed, the land, with its buildings and improvements, were transferred to the defendant by his father for the cited sum of $5,000.00.
The defendant, however, claims that the transaction by which he acquired the property was intended as a donation inter vivos and that no money actually passed between son and father.
Louisiana Civil Code Article 2402 sets forth the proposition that all property acquired during the marriage is presumed to be part of the community of acquets and gains existing between the spouses, even though the purchase be only in the name of one of the parties. R.D.M. Corporation v. Patterson, 255 La. 301, 230 So.2d 820 (1970); Prince v. Hopson, 230 La. 575, 89 So.2d 128 (1956); Succession of Hyde, 281 So.2d 136 (La.App. 3rd Cir. 1973); affirmed 292 So.2d 693 (1974).
Under Civil Code Article 2334 this presumption may be rebutted by showing that the property was acquired during the marriage with separate funds, or by inheritance or donation to one of the spouses.
The wife may overcome the presumption that the property is community by showing (even by the introduction of parole evidence) that the purchase was made with her separate and paraphernal funds under her separate control and as her separate and paraphernal property. Southwest Natural Production Co. v. Anderson, 239 La. 490, 118 So.2d 897 (1960); Graves v. U. S. Rubber Co., 237 La. 505, 111 So.2d 752 (1959); Smith v. Smith, 230 *743 La. 509, 89 So.2d 55 (1956); Prince v. Hopson, supra; Liuzza v. Heirs of Nunzio, 241 So.2d 277 (La.App. 1st Cir. 1970); Krokroskia v. Martin, 61 So.2d 630 (La. App.Orl.Cir. 1952).
"The jurisprudence, however, has established extracodal requirements for the rebuttal of this presumption by the husband. He must declare in the deed of acquisition that he purchases the property with separate funds and that he intends the acquisition to be separate property. The `double declaration' does not automatically defeat the presumption of community property, but merely permits the husband to go forward with evidence to rebut it. Without the `double declaration' it is conclusively presumed that the property was acquired for the community". Nathan, Notes Community Property, Sale and Resale of ImmovableNecessity of Double Declaration, 34 Tul.L.Rev. 385 (1960). See also: Smith v. Smith, supra; Succession of Hemenway, 228 La. 572, 83 So.2d 377 (1955); Borne v. Calmes, 284 So.2d 815 (La.App. 4th Cir. 1973); Succession of Pittman, 282 So.2d 799 (La.App. 1st Cir. 1973); Boulet v. Fruge, 221 So.2d 602 (La.App. 3rd Cir. 1969); LaFleur v. Guillory, 181 So.2d 323 (La.App. 3rd Cir. 1965).
There was clearly no "double declaration" in the cash deed from Murphy Libersat to the defendant herein.
As pointed out in Owens v. Owens, 259 So.2d 454 (La.App. 3rd Cir. 1972); dissent in Hollier v. Fontenot, 216 So.2d 842 (La. App. 3rd Cir. 1968); Huie, Separate Ownership of Specific Property, 26 Tul.L.Rev. 427, 451 (1952), exceptions have been created to the necessity of making the "double declaration". These include (1) partition sales, Troxler v. Colley, 33 La.Ann. 425 (1881); (2) exchanges, Kittredge v. Grau, 158 La. 154, 103 So. 723 (1925); Blalock v. Blalock, 259 So.2d 367 (La.App. 2nd Cir. 1972); Succession of Sonnier, 208 So.2d 562 (La.App. 3rd Cir. 1968); (3) changes of ownership following incorporation during the marriage of what was formerly a partnership interest which belonged to the husband's separate estate, Succession of Watkins, 156 La. 1000, 101 So. 395 (1924); (4) salere-sale transactions which are actually security transactions, Bagala v. Bagala, 237 La. 60, 110 So.2d 526 (1959).
The circumstances surrounding the transfer of the tract of property herein however do not come within any of the aforementioned jurisprudentially created exceptions.
Despite the foregoing, defendant maintains that the parole evidence presented (which was allowed over objections by plaintiff's attorney) should be considered by this court and allowed to show that in truth the transaction was intended as a donation and that no consideration passed between father and son.
The Supreme Court has previously addressed itself to this exact point in Lewis v. Clay, 221 La. 663, 60 So.2d 78 (1952). Therein a mother tried to prove by parole that a former property sale by deed to her son during his marriage, was not a sale, but in fact a donation. The court held that without the "double declaration" by the son, a presumption "juris et de jure" was created and parole testimony indicating that no consideration passed between the parties (contradicting the terms of the cash deed) was inadmissible. This principle has been consistently followed. LSA-C.C. Art. 2276. Perry v. Perry, 282 So.2d 752 (La.App. 1st Cir. 1973); Mut v. Mut, 222 So.2d 100 (La.App. 1st Cir. 1969); Girard v. Donlon, 127 So.2d 761 (La.App. 3rd Cir. 1961).
Therefore we opine that objections as to the admissibility of such evidence should have been sustained.
Defendant cites a number of cases allegedly reaching a different conclusion. We find them inapposite to the facts of this case.
In Betz v. Riviere, 211 La. 43, 29 So.2d 465 (1947) and Comeaux v. Noel, 251 So. *744 2d 94 (La.App. 3rd Cir. 1971) a wife was allowed the introduction of parole evidence to prove property was separate.
Owens v. Owens, supra, dealt with one of the aforementioned exceptions to the "double declaration" rule.
The last two cases cited, Ewell v. Giamanco, 139 So. 515 (La.App. 2nd Cir. 1932) and Chenevert v. Lemoine, 161 So.2d 85 (La.App. 3rd Cir. 1964), stand for the proposition that the parole evidence rule set forth in Art. 2276 of the Civil Code applies only between the parties to the authentic act and their representatives or privies, and not between a party to the act and strangers or third persons. Herein no strangers or third persons are participants in this suit. Instead the defendant is a party (vendee) to the transaction and his wife is a privy. See: Beatty v. Vining, 147 So.2d 37 (La.App. 2nd Cir. 1962), cert. denied January 25, 1963.
Defendant also contends that the foregoing jurisprudential application of Civil Code Articles 2402 and 2276, (to the effect that the husband must make the double declaration, while the wife need not,[1] the latter being permitted to come in and prove that property purchased is her separate property by use of parole testimony) is patently discriminatory and a violation of Art. 7, §§ 2 and 10 of the Louisiana Constitution and the equal protection and due process clauses of the 14th amendment of our U. S. Constitution.
The U. S. Supreme Court has on two recent occasions dealt with statutes concerning sex discrimination.
In November 1971 the Court decided Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Therein an Idaho statute, providing that as between persons equally qualified to administer estates, males must be preferred over females, was declared unconstitutional and violative of the equal protection clause of the 14th amendment. Mr. Chief Justice Burger delivered the opinion of the unanimous court. In reaching this conclusion the Court employed the so-called "reasonable basis" standard of review in its equal protection analysis to determine the invalidity of the classification. Therein, the Court stated the following:
"In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations omitted] The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classfication `must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' [Citations omitted] The question presented by this case, then, is whether a difference in the sex of competing applicants for letters of administration bears a rational relationship to a state objective that is sought to be advanced by the operation of §§ 15-312 and 15-314." [Brackets added]
The Court answered this question in the negative.
In May 1973, in Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) the Court also struck down a federal statute providing dissimilar treatment for men and women as unconstitutional in violation of the due process clause of the 5th amendment. Involved was a federal law providing that the wife of a male member of the Armed Services was entitled to quarters' allowance and medical benefits without reference to the amount of support actually provided. However, if the same benefits were claimed by a female *745 wife member of the Armed Services for her husband, it was necessary to show that she provided over one-half of the support for her husband. Four members of the Court moved to the "strict scrutiny" or "suspect classification" test which switches the burden and requires the state to prove that its objectives are of a compelling nature and that, in effect, there is no alternative means for accomplishing the same goals without using a suspect classification.
We take note, however, that a majority of the Court in Frontiero did not subscribe to the view that sex is a "suspect classification" and that the "strict scrutiny" test should be used in analyzing the question of constitutionality. The majority opinion was signed only by four Justices, with four Justices concurring, and one dissenting.
As a result Frontiero cannot be considered authority on the question,[2] and we will follow the reasoning in Reed v. Reed, supra, and apply the "reasonable basis" approach for our analysis of the constitutionality of the "double declaration" rule.
Under such approach the question presented in this case is whether the different obligation placed upon the husband (in proving that property was intended to be separate) bears a rational relationship to the objective that is sought to be advanced by the jurisprudential holdings to this effect.
We feel a reasonable basis for such "distinction" has in the past and does in fact exist today under our Louisiana community property regime.
One such basis involves public policy and has been recognized by our courts for almost a century, this being the fact of notice to third parties via recordation in the public records. The function of the double declaration is to place the public on guard and on inquiry as to the actual existing facts. Thus they can presume that anything in the name of the husband, without the declaration, is held for the community. Without requiring such a declaration and thus enabling the husband to freely fix at any subsequent time the tenure by which the property is held, the title to such would be "an uncertain, floating title, neither advisable nor permissible".[3] However, if in turn, the property is in the wife's name the public cannot presume that it is community property and must investigate. Sharp v. Zeller, 110 La. 61, 34 So. 129 (1902); Succession of Burke, 107 La. 82, 31 So. 391 (1902); Hero v. Block, 44 La.Ann. 1032, 11 So. 820 (1892); Huie at 26 Tul.L.Rev. 446; Wilcox, Civil LawCommentsThe Marital Status Of Property Purchased With Separate Funds, 9 Tul.L.Rev. 107, 115.
Another reason for the distinction stems from the relative positions of the wife and husband in the administration of the community. Inasmuch as the husband is given extensive powers of control over the community, the wife in turn must have counter-balancing protections. One such protection is the "double declaration" by the husband in order that there is reliable evidence of his intention at the time of the purchase. If the husband did not have to make it clear at the time of purchase that the property acquired was his separately, but could do so at a later date, it might well happen that the husband would leave this declaration to a subsequent time, when the value of the investment was determined. For example: If the property diminished in value, or a debt on it fell due, the husband could claim it was community property and therefore the community would be liable. He could further materially injure the wife's rights in the community assets if the property increased in value. Sharp v. Zeller, supra; Metcalf v. Clark, 8 La.Ann. 286 (1853); Bass v. *746 Larche, 7 La.Ann. 104 (1852); dissent in Hollier v. Fontenot, supra; Huie at 26 Tul.L.Rev. 446; Wilcox at 9 Tul.L.Rev. 116.
For these reasons we find no violation of the equal protection clause in the 14th amendment in the application of the "double declaration" rule.
Defendant also makes the argument that he has been denied his property rights without due process of law if he is unable to introduce parole and other evidence in an effort to prove the true nature of the property in question.
Defendant states that our law has established an irrebuttable presumption in favor of the notorial act as being a cash deed rather than a donation. The fact is, however, that the defendant would have been given the right to rebut this presumption by inserting a "double declaration" in the deed.
A state has great latitude in making classifications, so that differences and distinctions in treatment offend the constitutional guarantees of substantive due process only when the variations are arbitrary and without rational basis. Succession of Vincent, 229 So.2d 449 (La.App. 3d Cir. 1969); writ refused 255 La. 480, 231 So.2d 395 (1970), reh. den. 402 U.S. 990, 91 S.Ct. 1672, 29 L.Ed.2d 156.
As pointed out in the foregoing discussion, a rational basis does exist for the distinction in the husband's and wife's obligation in respect to proof of the status of immovable property acquired during the marriage. This is a reasonable exercise of the right of the state to regulate the form of donations, the formalities prescribed being for the protection of the wife, as well as third parties. Likewise the classification is not arbitrary inasmuch as it applies to all males and females in like circumstances.
For these reasons we also find no violation of the due process clause of the 14th amendment of the U. S. Constitution and in so doing conclude the trial judge was correct in holding the property, with accompanying family home, to be community property.

THE 22 SHARES OF STOCK
The facts in this regard are that on June 1, 1961, defendant's father, Murphy Libersat, incorporated two self owned business enterprises.
One of these was Murphy's Lease and Welding Service, Inc. One hundred shares were originally issued, 79 to Murphy Libersat, 15 to his wife, 5 to his son Donald, and 1 to his accountant, Lovelace Broussard. The record indicates a "paid in capital" of $1,000.00 was deposited for the stock by a check from Murphy Libersat alone.
The stock register of Murphy's indicates that on February 20, 1962, stock certificate number 4 issued to Lovelace Broussard for one share was cancelled and endorsed in blank on the back. The testimony is to the effect that the certificate was then delivered to Murphy Libersat who in turn gave it to his accountant and told him to issue same to his son, Gerald Libersat, by certificate number 6, which was done on April 26, 1962. The accountant testifies he in turn gave it to Gerald and same was subsequently transferred to the office safe.
Also indicated in the stock register is that certificate number 3, originally issued to Donald Libersat for 5 shares was also cancelled on February 20, 1962, endorsed in blank on the back of the certificate, and reissued in the same manner as above to Gerald Libersat by certificate number 5 on April 26, 1962.
On August 5, 1966, Murphy Libersat had his original 79 shares cancelled and concurrently reissued 5 shares in the name of his son, Gerald, by certificate number 8 on August 5, 1966.
Mutt's Welding Service was also incorporated on June 1, 1961, with the same *747 paid in capital, put up by Murphy Libersat. Defendant was one of the incorporators and five shares in the corporation was originally issued to him in certificate number 3.
Another of the incorporators, Frank Legros, received one share via certificate number 4, which was later cancelled and reissued to the defendant, in certificate number 5 on February 20, 1962, in the same manner as aforementioned.
Also, on August 5, 1966, Murphy Libersat had 5 shares formerly in his name reissued to his son by certificate number 7.
The stock records in both corporations also indicate that certain amounts were paid for the stock in each of the above transactions. The testimony is however to the effect that no money changed hands and that this was done merely on the books as a resale.
The defendant claims that all of the aforementioned shares of stock, now standing in his name, were donated to him by his father. The trial judge concluded this to be a fact and as a result ruled that the 22 shares were separate property. We reverse.
Shares of stock in corporations are classified as "incorporeal things". Succession of McGuire, 151 La. 514, 92 So. 40 (1922).
Article 1536 of the Louisiana Civil Code provides that "an act shall be passed before a notary public and two witnesses of every donation inter vivos of incorporeal things . . . under the penalty of nullity".
It logically follows that a donation of stock must be accomplished by notarial act. Our jurisprudence, however, has created a limited exception to Article 1536, insofar as stock is concerned, by applying the provisions of the Uniform Stock Transfer Act (LSA-R.S. 12:624, formerly R.S. 12:524). LSA-R.S. 12:624 provides two means by which the owner of stock may transfer his shares and, according to our jurisprudence, if the stock certificates are transferred in accordance with the Act, a donation is deemed to have taken place, without an accompanying authentic act. Feldheim v. Plaquemines Oil & Development Co., 282 So.2d 469 (La.1973); Succession of McGuire, supra.
Under LSA-R.S. 12:624 title to the certificate of stock, and to the shares represented thereby, can be transferred only by delivery (to the intended owner) of the stock certificate which (1) has previously been endorsed by the former owner either in blank or to a specified person (the intended owner). See Feldheim v. Plaquemines Oil & Development Co., supra; Succession of Hall, 198 So.2d 511 (La.App. 2nd Cir. 1967); or (2) is accompanied by a separate document containing a written assignment of that certificate or the power of attorney to sell, assign or transfer it, signed by the person appearing in the certificate to be the owner of those shares. See Succession of McGuire, supra.
Herein the defendant received the stock in question through three separate methods.
Five shares in Mutt's Welding Service were shown to be original issues of stock by the corporation in defendant's name. The provisions of LSA-R.S. 12:624 obviously do not apply to these shares. We base this conclusion on the fact that there was simply no transfer as envisioned in the provisions of the Uniform Stock Transfer Act. Under the language of the Act there can be no "delivery" of an endorsed certificate, and no "person appearing by the certificate to be the owner of the shares represented thereby", if the shares had never been previously issued. This was merely an original issuance of stock and, in our opinion, an authentic act was necessary to classify such issuance as a donation.
There is no evidence in the record to indicate that the issue or transfer to the defendant *748 of any of the stock in the two corporations was accompanied or evidenced by an authentic act.
Gerald Libersat also received a number of shares (5 in each of the two corporations) that had been originally issued to his father, Murphy Libersat, who subsequently had the original share certificates cancelled (without endorsement) and reissued in the name of his son.
Again it is clear that the provisions of the Uniform Stock Transfer Act do not apply. For it is evident that no transfer took place according to the provisions in the Act, i. e. delivery of an (1) endorsed certificate, or (2) certificate with accompanying written assignment of power of attorney. There was merely a reissuance of stock certificates in defendant's name without an accompanying authentic act, the latter being required, in our opinion, to classify the transactions as a donation.
The third means by which the defendant received stock was from two of the original incorporators (Lovelace Broussard and Frank Legros) and his brother, Donald Libersat. These parties all endorsed their respective share certificates in blank, the same being thereafter cancelled and reissued in the name of the defendant.
This is the only situation herein where the provisions of the Uniform Stock Transfer Act could apply. If the parties who owned the stock had delivered the certificates which had been endorsed in blank to Gerald Libersat we would presume that a donation had taken place.
The evidence, however, is clear that the defendant did not receive delivery of these endorsed stock certificates until after the were reissued in his name. As aforementioned the stock certificates were delivered back to Murphy Libersat by the former owners who in turn had his accountant cancel the shares and reissue them in the defendant's name. It was only at this point that the defendant was allegedly handed the shares, which were simultaneously placed in the office safe. Clearly, no transfer took place as envisioned in the Act.
From the foregoing, we conclude that the stock in question was not transferred in accordance with the provisions of the Stock Transfer Act and therefore cannot be considered as having been donated thereunder. Likewise, a donation of the stock by authentic act, as provided in Civil Code Article 1536, did not take place herein. No assertion was made that the stock was acquired with the separate funds of the defendant. As a result the shares of stock cannot be considered to be the separate property of Gerald Libersat and we thus reverse that part of the judgment which holds to this effect.
Neither do we consider the aforementioned shares of stock to be community, thereby entitling the plaintiff-wife to a one-half interest therein. The evidence clearly indicates that no consideration passed between the defendant and his father (or other former owners of the shares) and as a result no "sale" can be said to have taken place under the provisions of the Civil Code. LSA C.C. Art. 2439, 2464. Neither do we find that there was any other valid transfer of legal title to the property (stock) as envisioned by the Civil Code, such as in the case of an exchange. We conclude that the defendant is not the legal owner of the 22 shares of stock, nor does his former spouse have a legal claim thereto.
For the above and foregoing reasons the judgment of the trial court is affirmed insofar as it held the undisputed property, as well as the aforementioned 2.635 acre tract of land (with accompanying buildings and improvements), to be community property. The judgment is reversed, however, in regard to the 22 shares of stock in the two family owned corporations, and it is hereby *749 ordered, adjudged, and decreed that this property is not to be included in the community of acquets and gains formerly existing between plaintiff and defendant, nor is it the separate property of the defendant. Costs of this appeal are assessed against defendant-appellant.
Affirmed in part, reversed in part, and rendered.

ON APPLICATION FOR REHEARING
PER CURIAM.
In her application for rehearing plaintiff-appellant raises, for the first time, the question of estoppel and files a plea of prescription.
Essentially, it is argued that defendant is estopped from raising the question of "lack of consideration" due to his status as a stockholder and the fact that he allegedly judicially confessed ownership of the stock. Alternatively, it is contended that the question of "consideration" has been extinguished by prescription of five years.
These aforementioned arguments are apparently based upon our holding to the effect that the stock herein was neither separate nor community property because no transfer of legal title thereto ever took place, either by donation or otherwise. In so holding we also make mention in one sentence of our original opinion that no consideration passed between the parties and that a sale of the stock did not occur. This contention was never raised by the defendant. We, sua sponte, took notice of this fact and determined as a matter of law that the stock was owned by neither the plaintiff nor the defendant. Under these circumstances we do not find the doctrine of estoppel applicable.
Insofar as the plea of prescription is concerned, it comes too late, being filed after submission of the case for decision. LSA-C.C.P. art. 2163, Braswell v. Heartwell, 234 So.2d 197 (La.App. 2nd Cir., 1970); writ refused, 256 La. 361, 236 So. 2d 497 (1970); Tarver v. Columbia Gulf Transmission Company, 205 So.2d 764 (La. App. 3rd Cir., 1967), writ denied, 251 La. 1044, 208 So.2d 322 (1968).
The application for rehearing is denied.
NOTES
[1] Succession of Farley, 205 La. 972, 18 So.2d 586 (1944); Krokroskia v. Martin, supra.
[2] See: State of Louisiana v. Charlotte Devall, La., 302 So.2d 909 (1974), handed down on October 28, 1974.
[3] Hero v. Block, 44 La.Ann. 1032, 11 So. 820 (1892).